WILLIAMSON, Trustee, vs. THE NEW JERSEY SOUTHERN RAILROAD COMPANY and others.

1. The New Jersey Southern Railroad Company, (formerly The Raritan and Delaware Bay Railroad Company,) under the chartered powers of the latter company, to which they succeeded, had power when the mortgage in controversy in this suit was given, to mortgage after-acquired property.

2. That mortgage *held* to cover railroad stock (of another railroad company) subsequently purchased by the mortgagors. It was not necessary to its validity, as to the stock, that it should have been filed in accordance with the provisions of the "act concerning chattel mortgages."

3. Such mortgage, even if the stock is within the act concerning chattel mortgages, is, as to the stock, good as against everybody but those who are hindered or defeated.

4. The capital stock of a corporation is not goods and chattels within the meaning of the act concerning chattel mortgages. Hence, a mortgage of such stock need not be filed in accordance with the provisions of that act.

5. As between mortgagor and mortgagee, a mortgage of chattels is good without filing, and a mortgage of chattels which has not been filed, is valid against a subsequent purchaser or mortgagee of the chattels, with notice.

6. Where railroad companies were by legislative authority authorized to consolidate their capital stock, and by supplement one of them which had then mortgaged its after-acquired property was authorized in lieu of consolidation of capital stock, to purchase the stock of the other company, and the purchase, and sale, and delivery of the stock was actually made, for the purpose of consolidation, and an actual consolidation of the roads was in fact made, and completely recognized, the purchase, and the sale, and delivery of the capital stock was held to be a consolidation in accordance with the provisions of the acts.

7. The covenant for further assurance as to such after-acquired property contained in the mortgage, would be specifically enforced. Equity would, in such case, supply all formalities.

On demurrer of Jay Gould to supplemental bill.

*Mr. Leon Abbett*, for the demurrant.

*Mr. B. Gummere*, for the complainant.

Williamson v. N. J. Southern R. R. Co.

THE CHANCELLOR.

The demurrer presents the following questions:

1. Whether the company, now known as the The New Jersey Southern Railroad Company, (formerly as The Raritan and Delaware Bay Railroad Company,) had power, when the mortgage of the complainant was executed, to mortgage personal property not then owned by them, but which they might afterwards acquire.

2. Whether, if the mortgage covers the stock of the Long Branch and Sea Shore Railroad Company, it is not necessary to its validity, as to that property, that it should have been filed in accordance with the provisions of the "act concerning chattel mortgages."

By act of the legislature approved March 17th, 1854, (*Pamph. L.*, 1854, *p.* 530,) The Raritan and Delaware Bay Railroad Company were authorized to mortgage their road, lands, personal property, privileges, franchises and appurtenances. Under that power they executed a mortgage which was foreclosed, and their railroad and all their real and personal estate and franchises were purchased by Benjamin Williamson and George N. Titus, who afterwards, under the provisions of the "act concerning the sale of railroads, canals, turnpikes and plank roads, (*Nix. Dig.* 791,) with their associates, became a new body corporate and politic by the name of the mortgagors, The Raritan and Delaware Bay Railroad Company, and by virtue of the provisions of that act, became entitled to all the rights, liberties, privileges and franchises of the original corporation, among which was the power of mortgaging their property, given by the act of 1854. In the exercise of this power they executed the mortgage in suit, which was given upon all the real and personal property of the corporation then held, or acquired, or thereafter to be held or acquired, for use in connection with its road, and its branches, or any part thereof, or with the business thereof. The mortgage contains a covenant for further assurance, under the mortgage, of all the property and things mortgaged or in-

tended to be mortgaged.   The mortgagors (the name of their
corporation then being The New Jersey Southern Railroad
Company), subsequently to the execution of the mortgage, ac-
quired the railroad, and its appurtenances, of The Long Branch.
and Sea Shore Railroad Company.   For the purpose of ac-
quiring them, and as the means of consolidating the road and
property of the latter company with theirs, they purchased
capital stock of that company to the extent of sixteen-seven-
teenths of the whole amount.   The bill states that the demur-
rant, being the president of the mortgagors, (then the Southern
Company,) on the false and fraudulent pretence that the mort-
gagors were indebted to him, took that stock into his posses-
sion, pretending to take it as collateral security for indebted-
ness of the Southern Company to him, and fraudulently
caused it to be sold at auction, and bought it in himself,
through his agents.   The bill seeks relief against him, accord-
ingly.

The mortgagors had the right, and possessed the power to
acquire the stock in question.   By the 5th section of a sup-
plement (approved February 16th, 1870,) to the act of in-
corporation of The Raritan and Delaware Bay Railroad
Company, (*Pamph L.*, 1870, *p.* 232,) they were authorized
and empowered to unite with such company or companies as
were or might be incorporated by this state, whose railroad or
railroads, or branches, might connect with the railroad or
branches of the mortgagors ; and, to that end, with the consent
of two-thirds of their own stockholders, and the same propor-
tion of the company or companies with which they should
propose to unite, to consolidate the capital stock of such com-
pany or companies with their own, the assent of the stock-
holders to the consolidation to be certified to the satisfaction
of the governor, and filed in the secretary of state's office.

By a supplement approved February 16th, 1870, (*Pamph.*
*L.*, 1870, *p.* 228,) to the act of incorporation of the Sea Shore
Company, power was given to that company and the mort-
gagors, to consolidate their respective capital stocks on the
like terms with those provided in the above mentioned 5th

section of the supplement to the charter of the mortgagors. By the 3d section it was provided that the mortgagors might, in lieu of such consolidation, purchase the stock of the Sea Shore Company, or might purchase their road and pay for it in capital stock of the mortgagors, to be issued by them, and which they were thereby authorized to issue accordingly, for the purpose. Of the capital stock of the Sea Shore Company, (which did not exceed 1718 shares,) the mortgagors (then, as before mentioned, by change of name, The New Jersey Southern Railroad Company,) lawfully acquired under this authority, 1619 shares, or thereabouts, and a consolidation of the roads was, in fact, made. The Sea Shore Company ceased to keep up their separate organization, except as a mere matter of form, and in the interest of the Southern Company; they surrendered to the Southern Company their railroad, property, and equipments, and the latter took and retained, until the filing of the bill, entire, absolute, and exclusive possession thereof accordingly, to their own use, in all respects, and used them as their own, as part of their own plant and undertaking, and as part of their main road. The Southern Company, abandoning their terminus and terminal arrangements at Port Monmouth, made the terminus of the Sea Shore road at Sandy Hook, their only point of connection with New York, and spent over $300,000 in repairs to and equipment of the Sea Shore road, and in building station and engine houses, &c., on that road; and with their own funds constructed about three miles of railroad in extension of the Sea Shore road, from what was its then terminus, to its present terminus on Sandy Hook; and this extension and its piers, slips, and other structures, became and were, and are an undistinguishable part of the continuous line of the Southern road, which cannot be operated without them. In fact, the consolidation was actual and complete in all respects. The purchase and sale and delivery of the stock, (sixteen-seventeenths of the whole) by virtue of the legislative authority referred to, for the purpose of consolidation, and the consequent actual, practical, and absolute consolidation, completely recognized in all things, will be

held in equity to be a consolidation in accordance with the provisions of the acts. If the proceedings are lacking, it is not in substance, but form merely; the consolidation has been fully acquiesced in. If the consent of the stockholders of the companies does not appear, it has, nevertheless, been given. The Southern Company bought, and the stockholders of the Sea Shore Company sold. The board of direction of the former, represented the whole of the stockholders of their company in the purchase, and the stockholders of the Sea Shore Company acted for themselves. Two-thirds of the stockholders of each company have, in fact, consented to the consolidation. The Southern Company are the owners of two-thirds of the capital stock of the Sea Shore Company. The complainant is, as to the railroad and its appurtenances so acquired and constructed, on the case made by the bill, entitled to specific performance of the covenant for further assurance in his mortgage, and it might be decreed in this suit. Equity will, in such a case as is presented here, supply the formalities. *Story's Eq. Jur.*, § 98; *Gibbs* v. *Marsh*, 2 *Metc.* 243; *Shakel* v. *Duke of Marlborough*, 4 *Madd.* 463; *Metcalfe* v. *Archbishop of York*, 1 *M. & C.* 547; *Brown* v. *Higg*, 8 *Ves.* 561; *Amerman* v. *Wiles*, 9 *C. E. Green* 15.

The bill, as before stated, alleges that the demurrant, while president of the Southern Company, fraudulently possessed himself of this stock, and charges that when he took it, it was with full notice of the complainant's mortgage, and of the legal and equitable lien thereunder upon, and rights in, the stock. The question raised by the demurrer on this head is, whether the mortgagors, whose power to mortgage the real estate then owned by them, and the personal property which they then owned and had in possession, is not questioned, had the power to mortgage personalty thereafter to be acquired. The acquisition of the stock, under the authority of the act of the legislature, was, as before stated, the means by which the road of the Sea Shore Company was acquired. The mortgage covers the real property so acquired; and if the means of acquirement, the stock, only be considered, it covers them. The

mortgaging of personalty thereafter to be acquired, was a legitimate exercise of the power to mortgage personal property, granted by the act of 1854, and it will be maintained and effectuated in equity accordingly. *Story's Eq. Jur.*, §§ 1040, 1055 ; *Willink* v. *M. C. & B. Co.*, 3 *Green's Ch.* 377 ; *Coe* v. *Pennock*, 2 *Redf. Am. Railw. Cas.* 667 ; *Pennock* v. *Coe*, 23 *How.* 117 ; *Galveston R. R. Co.* v. *Cowdrey*, 11 *Wall.* 459 ; *U. S.* v. *N. O. R. R.*, 12 *Wall.* 362 ; *Mitchell* v. *Winslow*, 2 *Story, C. C. R.* 630. The mortgage in question has received confirmation in the above mentioned supplement to the charter of The Raritan and Delaware Bay Railroad Company, (*Pamph. L.*, 1870, *p.* 230,) the preamble of which act recites the giving of the mortgage under which the sale to Messrs. Williamson and Titus was made, and the subsequent organization of the company by them and their associates ; the issuing of the capital stock of the new corporation, and the giving of the complainant's mortgage ; and the act thereupon ratifies and confirms the proceedings set forth in the preamble.

The demurrant objects that the complainant's mortgage is not valid as to the stock, because it was not filed according to the provisions of the "act concerning chattel mortgages." A mortgage of capital stock of a corporation is not within that act. Such stock is not goods or chattels within the meaning of the statute. It is obvious that the act has reference to pledges of personal property of a kind which is capable of visible possession. The Massachusetts act, requiring the recording of chattel mortgages, provides that " no mortgage of personal property shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be recorded by the clerk of the town where the mortgagor resides. In *Marsh* v. *Woodbury*, 1 *Metc.* 436, it was held that it applied only to goods and chattels capable of delivery, and not to the defeasible or conditional assignment of a chose in action. See, also, *Winsor* v. *McLellan*, 2 *Story's C. C. R.* 492. But, as between mortgagor

and mortgagee, a mortgage of chattels is good without filing ; and a mortgage of chattels which has not been filed, is valid against a subsequent purchaser or mortgagee of the chattels, with notice. *National Bank of the Metropolis* v. *Sprague, 6. C. E. Green* 530. The bill, as has been stated, alleges that the demurrant, when he took the stock, had full notice of the complainant's mortgage, and of the lien and rights on and in the stock created and conferred thereby. On the bill, his attitude is that of a fraudulent trustee inequitably seeking to convert the trust funds to his own use. If such be his true position, and on demurrer it must be assumed that it is so, for so the bill declares it, the objection that the mortgage was not filed, is not available to him.

Nor can the demurrant avail himself of the objection which he urges in favor of creditors of the Southern Company as against the mortgage. The mortgage is as to the stock, even if it be conceded that the stock is within the act concerning chattel mortgages, good as against everybody but those who are hindered or defeated. Any person, therefore, who would contest it, must establish his position before the court as one of those in aid of whom the statute was framed. *National Bank of the Metropolis* v. *Sprague, supra.*

The demurrer will be overruled, with costs.