Hackensack Water Co. v. De Kay.

THE HACKENSACK WATER COMPANY, RE-ORGANIZED,
et al., appellants,

*v.*

MINNA DE KAY et al., respondents.

1. A suit for the foreclosure of a mortgage, given by a corporation to a trustee to secure a number of negotiable bonds issued under legislative power, is for the benefit of all the bondholders, whether the bill be filed by the trustee or by the holder of some of the bonds, making the trustee a defendant therein; and the holders of other bonds may come in and prove before the master without making themselves parties to the suit.

2. Where lands of an insolvent corporation are subject to a mortgage which is in dispute, an order may be made directing a sale, free from the mortgage, leaving the validity of the mortgage to be determined when the proceeds of the sale are disposed of. But a sale by a receiver, under an order directing a sale by public auction, without any mention of prior ₋iens or encumbrances, will transfer the property to purchasers, subject to the lien of whatever encumbrances may be upon it, with the right of the purchaser, nevertheless, to contest the validity of apparent encumbrances, either with respect to their legal existence or the amount due upon them.

3. An officer selling under judicial process has a naked power to sell according to the mandate of the court. He may adopt conditions of sale amply sufficient to secure compliance by purchasers with their bids, but he cannot impose any liability upon purchasers with respect to the property sold which would not result by law from the purchase.

4. A purchaser at a sale by a receiver, whose conditions of sale state that the property will be sold " subject to all legal liens and encumbrances thereon," is not estopped from contesting the validity of a prior mortgage upon the premises.

5. As in favor of creditors and third persons dealing with a corporation in good faith, the regularity and validity of its organization, effected under color of its charter, cannot be impeached, and the acts of its officers, who are officers *de facto* under color of an election, are binding upon the corporation.

6. In some cases an obligation made by a corporation is validated by the fact that the corporation has had a benefit under the contract, from which arises an obligation to pay the debt in common with other debts, but where a creditor claims a mortgage security which gives him a lien on the property of the corporation in priority over other creditors, he cannot maintain his security unless he establishes the validity of his mortgage as an encumbrance, which the corporation had power to make.

7. Persons dealing in the negotiable securities of a corporation are chargeable with notice of the power of the corporation to make such securities as conferred by its charter. If the power granted by the charter is subject to a condition relating either to the form in which such securities shall be made in order to be valid, or relating to some preliminary proceedings extraneous to the acts of the corporation or its officers, securities issued not in the prescribed form, or without the preliminary proceedings had, are subject to defences in consequence thereof, even in the hands of *bona fide* holders.

8. But this doctrine does not prevail in those instances in which the right to issue such securities is by the charter conditioned upon the performance of acts by the corporation or its officers, relating to the management of the affairs of the corporation. In such cases, if a person dealing with the corporation finds the acts to be within the scope of its powers under its charter, he has a right to assume that all such conditions have been complied with.

9. The doctrine which validates securities of a corporation within its apparent powers, but improperly, and therefore illegally, issued for the want of acts to be done by the corporation or its officers in the management of its internal affairs, applies only in favor of *bona fide* holders for value. A person who takes such a security with knowledge that the conditions on which alone the security was authorized were not fulfilled, is not protected, and in his hands the security is invalid, though the imperfection is in some matter relating to the internal affairs of the corporation, which would be unavailable against a *bona fide* holder of the same security. *Leggett* v. *N. J. & M. Banking Co., Sax. 542*, explained.

10. The Hackensack Water Company was incorporated in 1869, with a capital of $50,000. The charter provided for an organization as soon as $20,000 of the capital stock should be subscribed and paid in. In 1873, the corporation was organized and directors elected. Very little of the stock had then been subscribed, and less of it had been paid in. The directors were not qualified for the office, and were irregularly chosen. Under this organization, the company bought and took title for lands in its own name, constructed its works, acquired property to a considerable amount, and contracted debts to a larger amount. On a bill to foreclose a mortgage made by the corporation— *Held*, that the corporation was a corporation *de facto*, and its directors officers *de facto*, and that the acts of the latter were binding on the corporation.

11. The charter authorized the company to increase its capital to $100,000. The charter also empowered the company to borrow money not exceeding two-thirds of the capital paid in, and to secure the same by bonds and a mortgage upon its property and franchises. In August, 1873, a resolution was passed to increase the capital to $100,000. In September, 1873, the directors adopted a resolution that one hundred and thirty-three bonds, of $500 each, be issued, payable to a trustee or bearer, with coupons for the semi-annual interest. The bonds authorized by this resolution, and in fact issued, amounted to $66,500, nearly two-thirds of the capital authorized when increased. At that time not over $2,000 of capital had been paid in. In a suit to foreclose a mortgage made in pursuance of this resolution, duly executed under the corporate seal—

Hackensack Water Co. v. De Kay.

*Held,* that the mortgage, being within the powers granted by the charter, and on its face having the appearance of being within the company's power to mortgage, was a valid security in favor of *bona fide* holders of the bonds, notwithstanding the directors acted illegally in making the mortgage and the bonds, and putting the bonds in circulation without first obtaining subscriptions to the capital to be made and paid in sufficient in amount to justify them in making the mortgage.

On appeal from a decree of the chancellor.

The case in the court of chancery is reported in *9 Stew. Eq. 37*, under the name of *De Kay* v. *Voorhis.*

The Hackensack Water Company was incorporated by an act of the legislature, approved March 12th, 1869, with a capital of $50,000, with the privilege of increasing the same to the amount of $100,000. *P. L. of 1869 p. 133.* By section 13 it was empowered to borrow money, not exceeding two-thirds of its capital stock paid in, and to secure the same by bonds and mortgage upon its property and franchises. On the 1st of August, 1873, three of the five incorporators held a meeting, and it was then resolved that the capital stock should be increased to $100,000, and books were opened for subscriptions to the capital stock. The first election of directors was held August 23d, 1873.

In the summer of 1873 the company purchased in its own name the lands whereon to erect its pump-house and reservoir and other necessary works, and contracted with R. C. Bacot and J. F. Ward to construct the same for the sum of $125,000. The contractors constructed the works, completing them before the 1st day of September, 1874, and in October, 1874, the company began to furnish water to its customers in the village.

At a meeting of the board of directors, held on the 26th of September, 1874, it was resolved that one hundred and thirty-three bonds of $500 each, dated September 15th, 1874, payable November 1st, 1890, bearing interest at seven per cent. per annum, payable half-yearly, with coupons attached, be issued in due form of law to Henry H. Voorhis, trustee, and that a mortgage on all the real estate and property, rights and franchises, of the company, be executed and delivered to said trustee in due

form of law to secure the payment of said bonds, and that the treasurer be authorized to negotiate said bonds to the best advantage of the company in his judgment.   In pursuance of this resolution, one hundred and thirty-three bonds, each in the sum of $500, and amounting in all to the sum of $66,500, were issued under the seal of the corporation, signed by its president and attested by its secretary.   These bonds were payable to Henry H. Voorhis, trustee, or bearer, with interest payable semi-annually on presentation of the interest coupons annexed thereto at the First National Bank of Hackensack.   Each bond contained a recital that it was one of a series of like amount and date, amounting to $66,500, all secured by a mortgage on the lands, property, privileges, chartered rights and franchises of the Hackensack Water Company, duly executed and delivered by the company to said trustee; and on each was endorsed a certificate signed by the trustee, certifying that the bond was secured by the mortgage therein described.   The company also executed a mortgage to the trustee, under its corporate seal, upon its lands and all its rights, powers, privileges and franchises, to secure the payment of these bonds, and providing that the principal sum thereof should become due upon any default in the payment of interest for the space of thirty days.   The mortgage is dated September 15th, 1874, was proved October 8th, 1874, recorded October 13th, and was delivered to the trustee about the latter date.

The company, being indebted to Bacot and Ward on their contract for the construction of its works, on the 5th of December, 1874, delivered to them, on account of such indebtedness, forty-eight of the said bonds.   A balance still remaining due, Bacot and Ward brought suit and recovered a judgment for $13,964 and costs, and as judgment creditors, March 19th, 1879, filed a bill against the company as an insolvent corporation; a decree of insolvency was obtained, a receiver was appointed, and the property and franchises were sold by the receiver August 18th, 1880.   Bacot and Ward became purchasers of the property and franchises, and on the 18th of September, 1874, effected a

re-organization of the company under the corporate name of " The Hackensack Water Company, Re-organized."

Before the proceedings in insolvency were commenced, one Alfred W. Craven, now deceased, became the owner of twenty-four of the bonds delivered to Bacot and Ward, by a transfer from the latter; and the complainants, Minna De Kay and Alice C. Palmer, became owners of these twenty-four bonds under the will of the deceased; and, interest being unpaid, they filed this bill of foreclosure against the re-organized company. Bacot and Ward, and the trustee named in the mortgage, were made defendants.

*Mr. John Linn,* for appellants.

*Mr. W. S. Gummere,* for respondents.

The opinion of the court was delivered by

DEPUE, J.

This bill was filed for the establishment of the trustee's mortgage for the benefit of all the owners of bonds secured by it. The mortgage was given to the trustee to secure one hundred and thirty-three bonds, aggregating $66,500. The complainants hold only twenty-four of these bonds, amounting to $12,000. On account of the number of persons interested in the trust, the trustee might have filed the foreclosure bill in his own name for the benefit of the *cestuis que trust,* without making any of the bondholders parties. *Willink* v. *Morris Canal, 3 Gr. Ch. 377; N. J. Franklinite Co.* v. *Ames, 1 Beas. 507; Shaw* v. *N. C. R. R. Co., 5 Gray 162.* A single bondholder, in cases of this sort, will not be permitted in a court of equity to proceed for his demand without bringing in the other bondholders in some form or manner. *Story's Eq. Pl. §§ 102, 103, 157.* The trustee having refused to file a bill of foreclosure, was made a defendant as the representative of the other bondholders. Whether the bill be filed by the trustee named in such a mortgage, or by a holder of some of the bonds, the court will protect the rights of other

bondholders, although they are not made parties and do not appear in the suit. They may come in and prove their claims before the master, and obtain satisfaction of their demands, equally with the bondholders who are complainants in the suit. *Story's Eq. Pl.* §§ *99, 104 n.; 1 Daniell's Ch. Prac. 217; Cockburn* v. *Thompson, 16 Ves. 321; Good* v. *Blewit, 19 Id. 336; 2 Jones on Mort.* § *1385.* The chancellor properly directed a reference to the master to ascertain the whole amount due on the mortgage.

The receiver sold the mortgaged premises, including the company's franchises, at public sale, in pursuance of an order of sale made June 14th, 1880. Bacot and Ward became the purchasers for $2,500. They organized the new corporation, and conveyed to it the property and franchises, taking in payment therefor the stock and bonds of the re-organized company. The complainants contend that Bacot and Ward and the new company, which succeeded to their rights in the property, are estopped from contesting the validity of the complainants' mortgage, by reason of the manner in which the receiver's sale was made.

An order might have been obtained directing a sale free from the mortgage, leaving its legality to be determined when the proceeeds of the sale came to be disposed of. *Rev. p. 192* § *84.* This course was not pursued. The order to sell is in general terms, directing the receiver to make sale by public auction, without any mention of prior liens or encumbrances. A sale under this order would of itself convey the property and franchises subject to the lien of prior encumbrances, just as a sale by a sheriff, of lands under a common law execution, would convey them subject to prior encumbrances, as such encumbrances might be established in the future.

There is a class of cases in which a purchaser, taking title subject to an encumbrance prior in point of time, is precluded from disputing its validity. *De Wolf* v. *Johnson, 10 Wheat. 367; Dolman* v. *Cook, 1 McCart. 56; Conover* v. *Hobart, 9 C. E. Gr. 120*, are cases of this class. In those cases the lands conveyed were subject to mortgages claimed to be void for usury. In

*De Wolf* v. *Johnson*, the mortgagor had conveyed the premises expressly subject to the mortgage of De Wolf; and in *Dolman* v. *Cook*, and *Conover* v. *Hobart*, the mortgagor's conveyances of the mortgaged premises were expressly subject to the mortgages, and it so appeared in the deeds of conveyance. In each of these cases, the grantee, having accepted a conveyance under the mortgagor, subject in express terms to the payment of the usurious mortgage, was held to be estopped from contesting its validity. The theory on which cases of this class are founded is that the mortgagor having elected to affirm the usurious mortgage, by selling the mortgaged premises subject to the mortgage, the purchaser, by his contract as expressed in his deed, took an equity of redemption only, and therefore could not dispute the validity of the mortgage, and thus obtain an interest in the land which the mortgagor never intended to transfer to him. *Shufelt* v. *Shufelt*, *9 Paige 137; Post* v. *Dart, 8 Id. 639; Green* v. *Kemp, 13 Mass. 515; Morris* v. *Floyd, 5 Barb. 130.* But this principle does not apply to sales by officers under judicial process. A purchaser at a sheriff's sale, either under an execution at law against the mortgagor or at the foreclosure sale of a second mortgage, may defend against a prior mortgage on the premises on the ground of usury, although in fact by his purchase he acquired the property subject to whatever prior encumbrances there might be upon it. *Brolasky* v. *Miller, 4 Hal. Ch. 789; S. C., 1 Stock. 807; Pinnell* v. *Boyd, 6 Stew. Eq. 600.*

The receiver, in his conditions of sale, expressed that the property and franchises would be sold "subject to all legal liens and encumbrances thereon," and so reported his sale to the court of chancery, and by the order of confirmation he was directed to make a deed to the purchasers of the property and franchises, "subject to all legal liens and encumbrances thereon." The receiver's deed to Bacot and Ward contains in its recitals the same language, and conveyed the property to the purchasers, "to have and to hold in as full, ample and beneficial a manner as by authority of law and the orders of the court he could or ought to convey the same." The receiver, in making his sale, exercised a naked power. The order of sale simply directed the receiver

to sell the company's property and franchises at public sale. A sale in the execution of the power granted by the order would have placed the parties in this position : the purchaser would by law take the property subject to prior liens and encumbrances, with a right, nevertheless, to contest the validity of apparent encumbrances, either with respect to their legal existence or the amount due upon them. An officer selling under judicial process has simply a naked power to sell according to the mandate of the court. He may adopt conditions of sale amply sufficient to secure compliance by the purchaser with his bid, but he cannot impose any liability upon the purchaser with respect to the property sold which would not result by law from his purchase. He cannot, by conditions of sale, change the relations of parties interested in the property, or create any other liability on the part of the purchaser than to complete his contract of purchase. If he undertake to do more, he exceeds his authority and does a nugatory act. A proclamation by the officer that he sells subject to prior encumbrances, and such a recital in his deed, are equivalent to a notice to purchasers of what claims may be made against the title he conveys, and amount to nothing more. *Stevenson* v. *Black, Sax. 338; Pinnell* v. *Boyd, 6 Stew. Eq. 600, 602.*

It may also be remarked that the language of the conditions of sale and in the order of confirmation is inapt to exclude the defendants from their defence. It purports to subject the property to legal liens and encumbrances. The defendants defend on the ground that the complainants' mortgage was invalid in its inception, and was not then, and never was, a legal lien or encumbrance.

The complainants also rely upon an estoppel, arising out of transactions occurring at the sale, and at the time when the order of confirmation was made.

It appeared in evidence that the solicitor of the complainants, in the creditors' suit, who was also the legal adviser of the receiver, when he read the conditions of the sale, was inquired of with respect to what liens the property would be subject to, and replied by stating that Bacot and Ward had a judgment, and

that there was a mortgage—stating the amount—the legality of which was questioned, or in dispute. The person who made this inquiry testified that he understood that the purchaser would take the risk of having this mortgage established as a legal encumbrance. Mr. Hardenburgh, the receiver, testified that his recollection was that it was a sale "as is, you take things as you find them, and reap what profit you can." He says that his understanding was that the sale was subject to all legal encumbrances—that the purchaser must do the best he could, and that his business was simply to receive the money and divide it among creditors. He adds that he supposed the whole sale was a quit-claim.

This testimony does not warrant the inference that the purchasers in fact agreed at the sale to take the property and subject it to the complainants' mortgage, whether it was a legal encumbrance or not. The facts are wholly unlike those upon which this court held, in *Warwick* v. *Dawes, 11 C. E. Gr. 548*, that a purchaser at a judicial sale was estopped. There the purchaser who sought to invalidate a mortgage, bought the mortgaged premises at another foreclosure sale, in the presence of the mortgagee's solicitor, expressly subject to the mortgage in question, and agreed to pay the amount due on it. By this device he got the property for a price just the amount of the mortgage debt less than he would have got it if he had not agreed to admit that the mortgage was a valid lien. Under these circumstances his endeavor to repudiate the mortgage was a fraud, and was construed to be an estoppel.

It further appeared that Mr. Scudder, the solicitor of the complainants in the creditors' suit, presented the report of the sale for confirmation; that the vice-chancellor said that the price for which the property and franchises were sold was a grossly inadequate price; that Mr. Scudder thereupon stated that the purchasers had purchased subject to a mortgage, the amount of which he mentioned, and remarked that the purchasers would be fortunate if they got the amount out of the property which they were to pay for it, after payment of the liens to which it was subject, and that, after this statement was made, the vice-chancellor, observing that the order of confirmation recited that the

Hackensack Water Co. *v.* De Kay.

property had been sold subject to all legal liens and encumbrances thereon, signed the order of confirmation. How far representations by the complainant's solicitor, in a creditor's bill, made upon obtaining a confirmation of a receiver's sale, are competent to affect the title acquired by the purchasers, even though the purchasers be the same creditors who filed the bill, unless it be upon an application to set aside the sale, need not now be considered ; nor need the import or effect of the testimony be discussed. The complainants' bill does not contain any averments on that subject. The answer of Bacot and Ward, which is called for under oath, and is under oath, contains a denial that they in fact became purchasers of the premises, subject to the mortgage unconditionally, and avers that they purchased the property subject to the mortgage, if it should be sustained as a legal and valid encumbrance, and free from such encumbrance if it should be adjudged to be illegal and invalid. If the complainants proposed to exclude such a defence in fact on equitable grounds, arising from what occurred when the sale was confirmed, they should have put the facts on which the estoppel arose directly in issue by express averments in their bill, giving the defendants the benefit of an answer in denial of any assumed authority from them to make any such representations in their behalf.

Nor will the equitable estoppel which might arise in favor of the complainants personally, as against Bacot and Ward, springing from the fact that the latter transferred to the complainants the bonds they hold, answer the purposes of this suit. Of the one hundred and thirty-three bonds secured by the mortgage only forty-eight came to the hands of Bacot and Ward, and they negotiated only the twenty-four which the complainants own. Eighty-five of the bonds were negotiated directly by the company. Bacot and Ward had nothing to do with the negotiation of these, and some of them may be in the hands of *bona fide* holders. A decree in favor of the complainants on any special equity, peculiar and personal to them, will not be in conformity with their bill, nor embrace the merits of this litigation. The complainants' bill was designed to establish the mortgage for the benefit of the bondholders as a class, and a decree in conformity with it should

establish the mortgage as a valid mortgage for the benefit of all, leaving open for dispute before the master only the title of the bondholders presenting their bonds for allowance, respectively, as *bona fide* holders for value.

The result of this controversy must, therefore, be determined upon the merits of the substantial grounds of defence presented by the defendants' answers. They contend that this mortgage is invalid on two distinct grounds.

In the first place, the defendants insist that the organization of the corporation by which the mortgage was given was not perfected according to the terms and conditions prescribed by law, or by the act of incorporation. The charter provided for an organization and election of directors as soon as $20,000 of the capital should be subscribed and paid in; and the statute forbids the election of any person as a director who is not at the time a *bona fide* holder of some of the stock of the corporation. *Rev. p. 185 § 47.* The company was organized August 1st, 1873, and directors were elected August 23d, 1873. At that time very little of the stock had been subscribed for and paid in. Indeed, the paid up subscriptions to the stock were never such as to authorize an organization under the act of incorporation; and, although four of the five directors elected had subscribed for stock, none of them had paid his subscription. It is indisputable that the organization was illegal, and that the directors had not the legal qualifications for their offices. But it is also undeniable that there was an organization in form, and that the company became a corporation *de facto*, and its directors officers *de facto*, under color of an organization and of an election. Three of the five corporators named in the act of incorporation participated in the formal organization. Under this organization, such as it was, directors were chosen; a president, secretary and treasurer were appointed by them; a corporate seal was adopted, the corporation purchased and took title for lands in its own name, contracted for the construction of its works, completed its works at the cost of nearly $100,000, acquired property valued at $83,000, and contracted debts to an amount in excess of the sum of $100,000. It must also be borne in mind that the new

corporation acquired its title to the property and franchises of
its predecessor under this organization.   In this respect it suc-
ceeded the old corporation strictly in a representative capacity;
and the debt which was the basis of the proceedings in insolv-
ency, by which the property and franchises of the old corpora-
tion were transferred to the new, was a debt contracted under an
organization, the legality of which the new corporation now en-
deavors to impugn.

   The general rule of law is that the regularity and validity of
the organization of a corporation, effected under color of its char-
ter, cannot be impeached in any collateral proceeding, and that
the acts of its officers, who are officers *de facto* under color of an
election, are valid and binding upon the corporation.   This doc-
trine has been applied to proceedings to enjoin a corporation
from exercising its corporate franchises.   *Atty.-Gen.* v. *Stevens,
Sax. 369; National Docks* v. *Central R. R. Co.,* 5 *Stew. Eq. 755.*
It is applied with the utmost liberality in favor of creditors and
persons transacting business with the corporation in good faith,
relying upon the acts of the corporation and of its officers hav-
ing an apparent authority to represent it.   In *Knight* v. *The
Corporation of Wells, Lutw. 508,* one Day was elected mayor.
He was no member of the corporation, and was ineligible.   He
put the seal of the corporation to a bond.   In a suit upon the
bond it was objected that Day was not qualified to be mayor,
and therefore his acts were void.   But it was adjudged that Day,
having come to be mayor by color of an election, was mayor *de
facto,* and his acts were good.   *In re County Assurance Co., L. R.*
(*5 Ch. App.*) *288,* by the articles of association of a life insurance
company, P. was appointed managing director.   The directors
who were named in the articles and signed the memorandum of
association, refused to act, and passed a resolution that the com-
pany should not carry on business or allot shares.   Notwith-
standing this resolution, P. and one of the shareholders persisted
in carrying on the business at the registered office of the com-
pany, and allotted shares and appointed directors.   A stranger
effected a policy at the company's office, which was signed by
three of the *de facto* directors, and sealed with what purported

to be the company's seal. It was held that the policy was binding upon the company, Lord Justice Gifford saying: " I take the law as deduced from the authorities to be plainly this: In the first place, a stranger must be taken to have read the general act under which the company is incorporated, and also the articles of association, but he is not to be taken to have read anything more; and if he knows nothing to the contrary, he has a right to assume, as against the company, that all matters of internal management have been duly complied with. The company is bound by what takes place in the usual course of business with a third party, when that third party deals *bona fide* with persons who may be termed *de facto* directors, and who might, so far as he can tell, be directors *de jure.*"

In *Mahony* v. *East Holyford Mining Co., L. R. (7 H. of L.) 869*, the memorandum and articles of association of a mining company were registered, and subscriptions for shares were obtained, and paid into bank. The banker received a formal notice, signed by a person who described himself as secretary, to pay checks signed by either of three directors named, and countersigned by himself, in accordance with a " resolution passed this day," a copy of which was enclosed. The banker received and paid checks so signed and countersigned. It afterwards appeared that there never had been a meeting of the shareholders, nor any appointment of directors or of a secretary, but that the persons who had got up the company had treated themselves as directors and secretary, and appropriated the money obtained from the subscriptions. It was held that the banker, having paid out these moneys *bona fide*, was protected in so doing by the instructions under which he acted.

In the second place, the defendants contend that these bonds and the mortgage securing them are invalid, because executed in violation of section 13 of the company's charter. The general rule is, that a private corporation has power to mortgage its property, but not its franchises, as one of its incidental powers, unless prohibited by its charter or by some general statute. The general statute which enables every corporation to mortgage its property and franchises (*Rev. p. 177*) was not in force when this mortgage was made.

*Nix. Dig. 151.* Whether a corporation, which has in its charter limited and express powers to mortgage under certain prescribed conditions, has still a general implied power to make a mortgage of its property (*Chambers* v. *M. & M. R. R. Co., 5 B. & S. 588, 607*), I do not stop to inquire. The company's franchises are of considerable value, and a sale of them, as well as of the lands mortgaged, will be required to satisfy the mortgage. I will, therefore, consider the case as if the power to mortgage both species of property—the lands and franchises—is identical, and was derived from the company's act of incorporation.

The question presented under this head is independent of the power of the company to contract a debt and give an obligation to pay it on the footing of a simple debt. In some cases such an obligation is validated by the fact that the corporation has had a benefit under the contract, from which may arise an obligation to pay the debt in common with other debts; but where a creditor claims—as the complainants claim—a mortgage security which gives him a lien on property in priority over other creditors, he cannot maintain his security, unless he establishes the validity of his mortgage as an encumbrance which the corporation had power to make.

The section of the charter referred to authorizes the company to borrow money not exceeding two-thirds of the capital stock paid in, and to secure the same by mortgage upon its property and franchises and privileges. The company's capital was fixed at $50,000, with power to increase it to $100,000. At the meeting of August 1st, 1873, a resolution to increase the capital to $100,000 was adopted. The mortgage is for $66,500, nearly two-thirds of the capital stock as increased. Not over $2,000 of the capital stock subscribed had then been paid in. The directors made the mortgage and put out the bonds secured by it in plain violation of the charter. The defendants contend that for that reason the mortgage is invalid.

The consideration of this subject is very much simplified by the special circumstances of this case, and is relieved from many of the perplexing doubts and difficulties which have arisen in the English courts with respect to what formalities in the con-

stating instruments of public companies are imperative, and what directory only, and the exact *status* debentures issued by a public company shall have as negotiable securities. The doctrine of the English courts appears to be that the non-observance of such formalities as are imperative wholly avoids the securities, even in the hands of *bona fide* holders, but such securities, when defective only in such formalities as are merely directory, are binding upon the company as regards persons dealing with it, and not having notice, express or implied, of the imperfection; but it may be said that no definite rule has been established, discriminating between formalities that are imperative and those that are directory. *Green's Brice's Ultra Vires 509, 515, 519, 532.* The difficulties on this subject have arisen from the fact that such securities are not made negotiable by act of parliament; and the earlier cases hold that they are *prima facie* non-negotiable, though the later decisions favor the proposition that they are, in equity at least, negotiable free from the equities primarily attached to them. *Jones on Railroad Securities § 197; Green's Brice's Ultra Vires 257–268; In re Imperial Land Co., L. R. (11 Eq.) 478.*

In this state, coupon bonds of a corporation, issued under special legislative authority, and designed for the purpose of raising money on a credit, if they contain words of negotiability, are negotiable instruments the same as ordinary commercial paper; and the same immunity from defences in the hands of *bona fide* holders applies to mortgages securing such bonds as to the bonds themselves.

Persons taking securities of this character are chargeable with knowledge of the power to make them as conferred by the charter. If the power granted by the charter is subject to a condition, relating either to the form in which the security shall be made in order to be valid, or to some preliminary proceeding extraneous to the acts of the corporation or its officers, securities issued not in the prescribed form, or without the preliminary proceedings had, are subject to defences in consequence thereof, even in the hands of *bona fide* holders. Thus, where the statute required such bonds to be certified across their face and to be

Hackensack Water Co. v. De Kay.

registered, and declared that no bonds should be valid unless so registered, bonds issued without such registry and certificate were held to be void. *Morrison* v. *Inhabitants of Bernards, 7 Vr. 219.* So, also, where the statute requires, as a preliminary to the issuing of bonds by a county, town or other corporation, that the assent of a certain proportion of voters or taxpayers shall first be obtained, this requisite is essential, and the absence of it will avoid the bonds even as against innocent third parties. *Hudson* v. *Inhabitants of Winslow, 6 Vr. 437 ; Green's Brice's Ultra Vires 531, and note.*

But this doctrine does not prevail in those instances in which the right to issue such securities is by the charter conditioned upon the performance of acts by the corporation or its officers relating to the management of the affairs of the company. In such cases, as was said by Vice-Chancellor Wood, " if the party contracting with the directors finds the acts to be within the scope of their power under the deed of settlement, he has a right to assume that all such conditions have been complied with." *In re Athenæum Society, 4 K. & J. 549.* In *Royal British Bank* v. *Turquand, 6 E. & B. 327,* in the registered deed of settlement of a joint stock company, the directors were authorized to borrow on bonds such sums as should from time to time be authorized by a general resolution of the company. A bond, sealed with the common seal, was given by the directors to a banker, without a resolution of the company authorizing it. To a plea setting up that the bond was invalid for the want of an adequate resolution of the company, the plaintiff replied that his bond was signed and sealed by the directors, and that he took it in full faith and belief that it was authorized by and would be a binding security upon the company. The replication was held to be good, and it was adjudged that under the circumstances the obligee had a right to presume that there had been a resolution at a general meeting authorizing the borrowing of money on bond. Chief-Justice Jervis, in delivering the opinion of the Court of Exchequer Chamber, said : " The party here, on reading the deed of settlement, would find, not a prohibition from borrowing, but a permission to do so on

certain conditions. Finding the authority might be made complete by a resolution, he would have a right to infer the fact of a resolution authorizing that which, on the face of the document, appeared to be legitimately done." In *In re Comity Life Ins. Co.*, *supra*, it was held that, as in favor of a person dealing with the company in the ordinary course of business, it is sufficient if the contract appears on its face to be consistent with the articles of association and the act of parliament under which it is incorporated; and in *Webb* v. *Commissioners, L. R. (5 Q. B.) 642*, it was adjudged that a body corporate issuing debentures, which were assignable and purported to have been issued pursuant to powers conferred by statute, is estopped from alleging against innocent assignees for value that the debentures were issued illegally and in contravention of the statutory powers. *Agar* v. *Life Ass. Co., 3 C. B. (N. S.) 725*; *Prince of Wales Ass. Co.* v. *Harding, E. B. & E. 183*; *In re Land Credit Co., L. R. (4 Ch. App.) 460*; *In re Gen. Prov. Ass. Co., L. R. (14 Eq.) 507*; *In re Gen. S. Amer. Co., L. R. (2 Ch. Div.) 337*; *In re Int. Pulp Co., L. R. (6 Ch. Div.) 556*, are also expositions of this principle, and practical illustrations of its application to securities irregularly made by the directors of a corporation, and in the hands of *bona fide* holders.

In the cases cited, the obligations in question were those of companies organized under acts of parliament which provided a plan of incorporating those companies with special powers and liabilities, and such additional powers and restrictions as might be expressed in the articles of association or deed of settlement providing for the manner in which the business should be managed and conducted. These articles of association and deeds of settlement were required to be made a public record, and a company incorporated under these statutes is in the position of a corporation under a charter containing special and limited powers. Persons dealing with such companies are, as was said by Lord Hatherly, affected with notice of all that is contained in the statute and the articles of association; but with regard to all that the directors do with reference to what he calls "the indoor management of their concern," that is a thing known to them and,

Hackensack Water Co. *v.* De Kay.

to them only, and persons dealing externally with those managing the affairs of the company in a manner which appears to be perfectly consonant with the articles of association, are not to be affected by any irregularities which take place in the internal management of the company. They are entitled to presume that that of which only they can have knowledge, namely, the external acts, is rightly done, when those external acts purport to be performed in the mode in which they ought to be performed. *Mahony* v. *East Holyford Mining Co.*, *L. R.* (*7 H. of L.*) *893, 894.*

In *Chambers* v. *M. & M. Railway Co.*, *5 B. & S. 588,* a railway company was empowered by its special act to raise a capital of £555,000, and to raise by mortgage any further sum not exceeding £185,000; but no part of such further sum was to be raised until the whole of the capital had been subscribed for and one-half paid up. Part only of the capital was subscribed for. The company, being in want of money, borrowed £10,000, and sealed and issued Lloyd's bonds as security for the amount. The court held that the bonds were invalid, inasmuch as the borrowing power of the company was limited by the foregoing provision in its charter, and the company's defence to an action on one of these bonds was sustained; but the judgment of the court was distinctly put upon the ground that the plaintiff was chairman of the company, and had knowledge of the purpose for which the bonds were made, and was a party to the resolutions by which the secretary was authorized to seal them. Indeed, as is apparent from all the cases cited, the doctrine which validates securities within the apparent powers of the corporation, but improperly and therefore illegally issued, applies only in favor of *bona fide* holders for value. A person who takes such a security with knowledge that the conditions on which alone the security was authorized were not fulfilled, is not protected, and in his hands the security is invalid, though the imperfection is in some matter relating to the internal affairs of the corporation, which would be unavailable against a *bona fide* holder of the same security. *In re Magdalena Steam Nav. Co.*, *6 Jur.* (*N. S.*) *975; Woodhams* v. *Anglo-Australian Co.*, *8 Jur.* (*N. S.*) *148; In re South Essex Gas*

*Light Co., Id. 357;* In re *Patent Bread Mach, Co., L. R. (7 Ch. App.) 289;* In re *General Provident Ass. Co., L. R. (14 Eq.) 507;* In re *Hercules Ins. Co., L. R. (19 Eq.) 302, 310;* In re *International Pulp Co., L. R. (6 Ch. Div.) 556, 560;* In re *Native Iron Ore Co., L. R. (2 Ch. Div.) 345;* In re *S. Amer. Co., Id. 337.* In *Leggett v. N. J. M. & Banking Co., Sax. 541,* the corporation was a banking company, with no power to mortgage, except such as is incidentally possessed by a corporation; and the charter provided that all its affairs, property and concerns should be managed by a board of directors. The president and cashier, without being authorized by the directors, executed a mortgage in the corporate name and under the corporate seal, upon the banking-house, to Leggett and Burtis, in trust for the Franklin Bank, to secure an existing debt. Leggett, one of the trustees, was president of the Franklin Bank, and he knew that the president and cashier of the mortgagor made the mortgage without any authority from the directors. The company had no statutory power to make mortgages as negotiable securities, and the trustee and the *cestui que trust* accepted the mortgage with full knowledge that it was illegally made. The mortgage was not, in a legal acceptation, a negotiable security, nor was the mortgagee a *bona fide* holder. Though the debt remained, the mortgage was declared invalid.

The decisions in the English courts referred to were, in the main, made with respect to securities irregularly issued, for the want of proper resolutions by the shareholders authorizing them. But the principle established, distinguishing between limitations and conditions in the statute and articles of association—external matters of which the public has notice by the public record, and acts to be done by the corporation or its officers as conditions precedent to the making of such securities in the internal affairs of the company—is applicable to every sort of infirmity to which such securities may be subject. In the courts of this country it may also be considered as settled law that, except where the statute empowering a corporation to make securities designed to be negotiable, prescribes as a condition that they shall be issued with certain formalities to be observed, as in *Morrison v. Township of Bernards,* or prescribes as a condi-

tion to the power the approval of the voters at an election, as in *Hudson* v. *The Inhabitants of Winslow* (events external to the business of the corporation, the concurrence of which may be easily ascertained), where the corporation has power, under any circumstances, to issue negotiable securities, a *bona fide* holder has a right to presume that they were issued under the circumstances which give the requisite authority; and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper. *City of Lexington* v. *Butler, 14 Wall. 282; 2 Dan. Neg. Inst.* §§ *1487, 1500; Boyd* v. *Kennedy, 9 Vr. 146; Mayor of Jersey City* v. *Copper, 15 Vr. 634.*

In the present case the company was authorized to increase its capital to the sum of $100,000. A resolution to effect the increase was in fact adopted. By its charter it was empowered to issue bonds and secure them by a mortgage of its property and franchises to an amount not exceeding two-thirds of its capital paid in. These securities it was authorized to make for the purpose of borrowing money, a purpose which could be promoted only by making such securities negotiable, and thereby adapted to be placed in the market. The bonds issued amounted to the sum of $66,500, and were within the limit of two-thirds of its possible capital. The bonds were payable to the trustee or bearer, with interest coupons attached, sealed with the corporate seal; and in each bond was a recital that it was one of a series of like amount, tenor and date, amounting to $66,500, all secured by a mortgage on the lands, property, privileges, chartered rights and franchises of the company, duly executed and delivered by the company. The mortgage purported to be sealed with the seal of the corporation and signed by its president and secretary, and was accompanied by proof by the oath of the secretary, in due form of law, that the seal affixed thereto was the corporate seal of the corporation, and was so affixed by authority of said corporation pursuant to a resolution passed at a regular meeting of the board of directors.

The mortgage was within the power granted to the corporation by its charter, and on its face had every appearance of hav-

ing been made and executed strictly in conformity with the power of the company to mortgage its property and franchises. It was illegally made and executed only for the reason that the directors violated their duty in making the mortgage and the bonds, and putting the bonds in circulation without first obtaining subscriptions to the capital, to be made and paid up, sufficient in amount to justify them in making the mortgage. The stock ledger of the company, the amount of subscriptions to its stock, and to what extent the same were paid in, were matters relating to the company's internal affairs, and exclusively within the cognizance of its officers and stockholders, into the condition of which no stranger had a right to inquire. In all the external circumstances—competent legislative authority, an organization *de facto*, directors and officers *de facto*, the corporate seal affixed, with the secretary's oath that it was legally affixed—the transaction was perfectly legal. These are the matters which persons dealing in corporate securities are bound to take notice of. The imperfection arose from the omission of acts which the directors should have done in the management of the private business of the company. Those are the matters with respect to which third persons are not obliged to be informed. (Finding the power to make the mortgage in the charter, and that the power might be made complete on certain conditions to be performed by the corporation in the management of its internal affairs, third persons would be justified in assuming that such condi' had been complied with, and that everything had been done by the corporation or its directors which was necessary to validate the securities before they were put in circulation.) As against a *bona fide* holder, who has taken upon the faith that the security is what it appears to be, a corporation cannot defend on the ground of such omissions on its part or by its directors.

The complainants took their bonds without any knowledge of the mode in which the corporation was organized, or of the condition of the company's subscription to its capital when the mortgage was made. They are admitted to be *bona fide* holders, and are entitled to have the mortgage established and payment of their bonds decreed out of the mortgaged premises. Whether

the holders of the residue of the bonds are entitled to the same right, as being *bona fide* holders, must be determined before the master in taking the account.

The decree, establishing the mortgage and directing an account, should be affirmed.

*Decree unanimously affirmed.*