GERSHOM RUSLING'S ADMINISTRATOR

*v.*

STACY B. BRAY et al.

1. Under the one hundred and forty-seventh rule, an application for the rehearing of a decree advised by a vice-chancellor, should ordinarily be made to the vice-chancellor who advised the decree, and if he advise a rehearing he should rehear it himself, and such applications should be made to and entertained by the chancellor only in exceptional cases.

2. In a dispute between a father as tenant by the curtesy and his daughter as heir of her mother, over the surplus-money on the foreclosure of a mortgage given by the mother on her own lands, the father claiming allowance for the amount of a prior mortgage on the premises, alleged by him to have been paid by him out of his own funds, and also for the cost of improvements put on the premises both before and after his wife's death, at his own expense, the father cannot establish his claim to re-imbursement by his own testimony as to what his wife told him in reference to his claim and the payment thereof.

Bill to foreclose.   Application for rehearing.

*Mr. C. A. Skillman,* for the application.

*Mr. J. F. Rusling, contra.*

THE CHANCELLOR.

This is an application by petition for the rehearing, by the chancellor himself, of an order, signed on the advice of one of the vice-chancellors, distributing the surplus money (about $1,300) remaining from the sale of the mortgaged premises in this suit.   The application is made under the one hundred and forty-seventh rule, which provides that a rehearing of decrees signed upon the advice of the vice-chancellor, may be had in the same manner and upon the same terms as in cases heard by the chancellor, but that no rehearing shall be ordered as to conclusions of fact unless the vice-chancellor shall certify that in his opinion the questions involved, or some of them, should be again

heard upon the evidence. This rule was made many years ago, at the time when the first act providing for the appointment of a vice-chancellor was passed. Under it but few applications have been made for a rehearing by the chancellor himself, and none such have been ordered except under special circumstances, as where the vice-chancellor had gone out of office, or where he himself was of opinion that the rehearing should be had before the chancellor. The proper construction of the rule is (in accordance with the practice under it) to hold that, normally, applications under it are to be made to the vice-chancellor who advised the decree, and if he advise the rehearing he is to sit and rehear the matter, and that applications under the rule are not to be made to the chancellor himself except where there are peculiar reasons therefor. Under the rule, a rehearing by the vice-chancellor may be had where he deems it proper. The object of the act was not only to relieve the chancellor in disposing of the business of the court, but to promote dispatch and economy in the administration of justice, and to diminish delay and expense. Obviously, if applications for a rehearing by the chancellor himself may be made in every case where the decree has been signed on the advice of a vice-chancellor, such applications will be very numerous. They will, in effect, be appeals from the vice-chancellor to the chancellor, and so the purpose of the legislature, to a considerable extent, be frustrated. The object of the legislature will be best effectuated by the refusal, on the part of the chancellor, to entertain applications for a rehearing of decrees signed on the advice of a vice-chancellor, unless there appear to be special reasons therefor.

When the application in the case before me was made, there had been no reported declaration of the court on the subject of the construction of the rule. I have therefore deemed it proper to deal with the application as if it were exceptional, and consider it upon its merits. The opinion of the vice-chancellor is a very full one. He does not certify that, in his opinion, his conclusions as to the facts should be reviewed. But there appears to be no dispute as to the facts in any material respect. The contest is between Mr. Bray, as tenant by the curtesy, and his

daughter, the heir-at-law of the mortgagor, her mother, his deceased wife, over the distribution of the surplus-money from the foreclosure of the mortgaged premises, which were land owned by Mrs. Bray at her death. Mr. Bray applies for a rehearing of the order distributing the surplus. He insists that he is entitled, in that distribution, to an allowance of the amount of a mortgage (canceled in fact and of record) on the property prior to those which were foreclosed in this suit, which prior mortgage he says was paid by him out of his own funds. He also claims allowance for the cost of improvements put by him on the property both before and after his wife's death. His claim to these allowances is based upon what he says his wife said to him in reference to the property, on which expression of hers he founds a claim to re-imbursement. There is no evidence of the expression, except his own testimony. But in this proceeding he is to be bound by the same rules of evidence as would be applicable were this a direct proceeding by him against his daughter for the allowances. In such a suit he could not recover upon his own testimony as to verbal statements of his deceased wife. The act of 1880 (*P. L. of 1880 p. 52*), while it renders him competent as a witness in such case, would not do so to the extent of permitting him to give testimony as to any transaction with or statement by her; for her heir-at-law would be regarded as representing her within the meaning of that act. "It is apparent," said the court of errors and appeals, in *Smith* v. *Burnet, 8 Stew. Eq. 314, 322*, "that the object of the legislature is to be primarily regarded, and that the object is to close the mouth of a party whose interest is antagonistic to the estate of a deceased person in regard to those transactions and conversations in which the deceased bore a part, and concerning which he, if living, would be the most important, perhaps the only, witness besides the opposing party."

Mr. Bray, therefore, is without proof on which to base his claim. According to his own statement of it, what his wife said was of so vague and indefinite a character as to be entitled to but little, if any, weight, and the vice-chancellor considered it insufficient to support the claim. He was of opinion, also, that

the fact that Mr. Bray did not set up his claim in this suit at all until he advanced it in this application for surplus, which was made almost two years after the suit was begun, provokes suspicion as to the *bona fides* thereof, and leads to the rejection of it as being stale, if not unfounded. I see no reason to apprehend that any mistake of law has been made in the order complained of. The order gives no costs to either party. This award is, under the circumstances, eminently proper, in view of the great and unnecessary prolixity of the proceedings on both sides before the master. The application is denied, with costs.