Edward Maxson, Esq., was duly appointed and qualified as receiver of the defendant corporation in this cause, *Page 434 
and on March 3d 1925, an order was made and entered herein granting leave to the Bankers Trust Company, likewise a corporation, to file a bill against the receiver for the foreclosure of the mortgage given by the defendant Alamac Hotel Company, Incorporated, November 10th, 1922, for $150,000, to the Bankers Trust Company, which was done, and such proceedings were afterwards had in such foreclosure suit (Bankers Trust Co. v.Alamac Hotel Co., 57 — 615), that a final decree was entered therein on August 25th, 1925, and a writ of fi. fa. in pursuance thereof was duly issued, directed and delivered to the sheriff of the county of Morris, who advertised the mortgaged premises therein described for sale, which sale was to have been cried off on Monday, October 19th, 1925. Two days previously, and on October 17th, the receiver applied to one of the vice-chancellors and obtained from him an order on the Bankers Trust Company, and the sheriff, to show cause before this court at the chancery chambers, Jersey City, on October 26th, why the Bankers Trust Company should not be restrained from proceeding with the sale, with an ad interim stay. On the return day, counsel for the Bankers Trust Company appeared in the chancery chambers at Jersey City, and attended before the vice-chancellor who was hearing motions, for the purpose of opposing the making of the order absolute. In the meantime the receiver obtained from another vice-chancellor, who was sitting for the hearing of causes, an order continuing the order to show cause until January 6th, 1925. Neither party criticises the other with regard to this transaction, and I, therefore, conclude that there was an inadvertence with respect to it, which entirely excuses Mr. Washington from laches.
The order to show cause on October 17th, 1925, restraining the sale, was obtained upon an affidavit of William Harris, Esq., one of the attorneys for Mr. Maxson, the receiver of the Alamac Hotel Company. It stated, inter alia, that on October 17th he received a telephone call from Mr. Hershenstein, one of the attorneys for the Alamac Hotel Company, reorganized, to the effect that he believed that if the *Page 435 
sale were adjourned for about four weeks the hotel company would take over the New Jersey hotel in such a manner that it would be for the best interests of all the creditors and stockholders; that if the property were sold on the day fixed there would be no assets left for the administration of the estate.
The sale being thus held up, Mr. Washington applied to me for an order on Mr. Maxson, receiver, to show cause why both the restraining order and the order of continuance should not be vacated and the restraint discharged, so that the sale might proceed according to the command of the writ of execution. Such an order was granted, returnable November 4th, 1925, and was duly served as therein provided. It was obtained upon the facts above recited, and also affidavits by Emerson Richards, Esq., president of the Bankers Trust Company, the mortgagee; Mr. Max Grossman, vice-president, and Mr. Washington. Mr. Richards deposed that, at the request of Mr. Harris, counsel for the receiver, and upon statements from him that the receiver expected to be able to reorganize the Alamac Hotel Company or find a purchaser for the premises in question, the Bankers Trust Company consented to a number of adjournments of the application for permission to file the bill for foreclosure, namely, from January 9th, 1925, to March 2d 1925, when the order was taken, because nothing had been done on behalf of the defendant company; that about June, 1925, Mr. Maxson, the receiver, fully discussed the matter with him, Mr. Richards, and it was then and there agreed between them that the Bankers Trust Company should proceed with its foreclosure and should enter its decree for the full amount due to it, the receiver requesting a delay of sale under execution until Labor Day, 1925, by which time he stated he hoped to be able to find a purchaser for the property in question; that the Bankers Trust Company had been compelled to expend $4,500 for fire insurance upon the mortgaged premises and nearly $500 for advertising the sale, which was done extensively to interest bidders; that since notice of the restraint herein counsel for the mortgagee had instructed the sheriff *Page 436 
to adjourn the sale from week to week; that on September 18th, 1925, the deponent met the receiver and counsel representing the New York Alamac Company, and, at their request, agreed to a three weeks' delay in the sale by the Bankers Trust Company, in order to permit a further opportunity to reorganize the Alamac Hotel Company; that deponent procured a purchaser to bid upon the property a sufficient sum to at least cover the claim of the mortgagee; that as a result of the restraint herein, and the possible prospect of a continuance of such restraint, it had become doubtful if such a purchaser would continue interested much longer, as he was negotiating for the purchase of another hotel. Mr. Grossman's affidavit was mainly a corroboration of that of Mr. Richards.
Mr. Washington, corroborating the other affidavits, deposed that, about June, 1925, he was present at a conference between Mr. Maxson, receiver of the Alamac Hotel Company; Mr. Richards, president, and Mr. Grossman, vice-president, of the Bankers Trust Company, at which the receiver requested that the sale under foreclosure be delayed until after Labor Day, so as not to interfere with the operation by him of the hotel during the summer season, stating that he was quite hopeful that he would have a purchaser for the hotel by the fall of 1925; that this was agreed to; that upon receiving the order restraining the sale, he at once telephoned the sheriff, instructing him to adjourn the sale from week to week, which he agreed to do. And this I understand the sheriff has done. There is a letter from Mr. Washington to Mr. Harris, dated and sent April 17th, 1925, attached to Mr. Washington's deposition and marked an exhibit, which is significant of the negotiations in this case, and which reads in part as follows:
"Your letter of the 15th inst. to hand. Our board met to-day and I read your letter to them. I was instructed not to consent to stipulation extending time to receiver to answer, as you requested, and I accordingly must return both copies of stipulation to you herewith unsigned. My clients feel that they have too much money tied up in this proposition. In addition, the matter has already caused them very great inconvenience and expense. They feel that other parties *Page 437 
in interest have had since last fall to act and have done nothing to date * * * If you can arrange with some other bank or trust company to take an assignment of our mortgage, paying to my client therefor all the sums due them under said mortgage, they will probably consent to assign such mortgage. They have instructed me, however, to insist upon payment to them at this time of all sums upon said mortgage in full."
Then follows advice that if the mortgage is purchased the purchaser could be substituted as complainant and his representative as solicitor and counsel, and Mr. Harris is admonished that if he wished to take advantage of the suggestion he should act immediately.
On the hearing before me no factual defense was made by the receiver, he and his counsel conceding that the facts stated in the affidavits filed on behalf of the mortgagee were true. They simply stated that, if given about a month's time, they felt sure they could raise the money to pay off the mortgage or secure a purchaser at the sheriff's sale. At the conclusion of the hearing I made an order vacating the restraining order and the order for its continuance, and directed the sheriff to proceed to sell as in the fieri facias he was commanded.
The reasons addressed to me for staying the sale might well have been addressed to the mortgagee, and, in fact, they were, and with success for a considerable period; but the trouble with the receiver's cause on this score is, that he is not possessed of any equity. Equity, as a noun, is defined to be "an equitable claim or right (Webs. New Int. Dic. 742), and such a claim or right a party possessing it has a right to enforce, and the adversary party has no right to thwart that enforcement by anything less than countervailing right. An "equity" is not a chancellor's sense of moral right, or any vague or indefinite opinion as altruism, but is a right cognizable in a court of chancery, governed by established rule and fixed precedents. See, generally, 3 Words Phr. 2444, 2446.
The time within which payment might be made in exoneration of the mortgaged premises from the debt due from the mortgagor to the mortgagee, was nominated in the bond *Page 438 
and stipulated in the mortgage. The mortgagee could, and did, extend the time for payment until forbearance, in its judgment, ceased to be a virtue. Then it commenced its suit and the law gave additional time, namely, the period necessarily occupied in the pendency of the suit, which is considerable, even when the suit is undefended; but the court has not power to further extend the time except for some sufficient cause, such as a defect in the proceedings or the like. The law disfavors the hindering and delaying of creditors, and the court cannot be induced to assist defendant in any such attempt.
The argument on behalf of the receiver is to the effect that it is inequitable and unconscionable not to give the Alamac Hotel Company additional time before selling the property which it pledged for the repayment of the loan to it by the Bankers Trust Company, and that, therefore, more time should be extended. The trouble with this claim is that it does not rise to the level of a right. The rights and equities of the parties to the mortgage were settled by the final decree of foreclosure. After that the defendant in the foreclosure suit had no right to obstruct the process of the law invoked by the mortgagee for the collection of its debt.
The position taken by the receiver is, in effect, an assertion that the complainant is resorting to unconscionable and oppressive procedure against the defendant. Not so. It is, on the contrary, only pursuing an absolute right which it has under the law and statutes of this state, plus the rules of this court. The question is not an open one. It was set at rest long ago by the opinion of the late Chief-Justice Beasley, speaking for a unanimous court of errors and appeals in Davis v. Flagg,35 N.J. Eq. 491.
In that case (Davis v. Flagg) the court of chancery had restrained the prosecution of a foreclosure suit (but only upon condition that if complainant refused to assign his mortgage to such person as defendant might designate on tender of the full amount due to him, his action should be stayed). Chief-Justice Beasley (at p. 494) said: "The legal pursuit of one's right, no matter what may be the motive *Page 439 
of the promoter of the action, cannot be deemed either illegal or inequitable. In the present case, whatever the purpose of this second mortgagee may have been, he did no illegal act; the purchase of the first mortgage was legal and the prosecution founded on it was legal, and the consequence is that his suit cannot be stayed unless the rule is to be sanctioned that an assignee of a mortgage has no right to foreclose it, provided it be shown that, in obtaining such encumbrance, he was actuated by ill-will or other immoral feeling. The abstract precepts of the moral code, disconnected from property and the rights of persons, are neither enforced nor noticed by courts of law or by courts of equity." And (at p. 495) he quoted from the case of Morris v.Tuthill, 72 N.Y. 575, as follows: "The motives of the former owner of the mortgages in selling, or the plaintiffs in buying them, are not material, and the appellant has no concern with the consideration of the assignment. It is sufficient that the mortgage debt is due and is now owned by the plaintiff. He may have bought the mortgages from motives of malice toward the defendant and solely with a view to sue upon them, and the former owner from a like motive may have transferred them without consideration, but this would not constitute a defense to the action. The defendant can only arrest the action by paying the amount due, or tendering the same and bringing it into court. The facts stated do not constitute an equitable defense."
The chancellor's decree in Davis v. Flagg was, as stated, unanimously reversed. The rule therein laid down was enforced by Vice-Chancellor Green in McFadden v. Mays Landing RailroadCo., 49 N.J. Eq. 176, and by me in Bull v. InternationalPower Co., 84 N.J. Eq. 6. While the facts in the case at bar differ from those in the reported cases just cited, as the facts in most cases differ from those in other cases, the principle enunciated in Davis v. Flagg, McFadden v. Mays LandingRailroad Co. and Bull v. International Power Co., are controlling. To give their doctrine effect in a given case requires that the complainant shall be permitted to proceed at all stages of the prosecution whether *Page 440 
at the start or at the finish, and that it shall not be hindered and delayed in the recovery of its claim by anything short of a sufficient defense before decree, or of defensive matter of some sort arising after decree, going to its enforcement.
The debtor always has the option of appealing to his creditor for indulgence, but the court has no right to extend any such altruistic benefit. The complainant may always insist upon his strict rights and demand their enforcement. The courts are not only required to do justice, but to execute it.
Suppose the debt of the Alamac Hotel Company to the Bankers Trust Company were evidenced by a promissory note instead of residing in a mortgage. Upon default in payment the creditor would sue at law, and, upon recovery of judgment, which would have been inevitable, can it be pretended that an application could be made to the law court, in which the judgment was recovered, to stay its execution for any such reason or reasons as are given in this case? Certainly not.
Because the application to the vice-chancellor for a stay was rested on no equity, the order to show cause was improvidently granted, and will therefore be set aside. Of course, the order of continuance, which seems to have been unreasonably long, must fall with it.
It may be said that this action is one by the chancellor reviewing the order of vice-chancellor. It is true that the chancellor in all ordinary cases will decline to make such review, and leave the objecting party to obtain relief by appeal.Gregory v. Gregory, 67 N.J. Eq. 7. It is also true that the present case does not fall within either of the exceptions mentioned in Gregory v. Gregory, when the chancellor will not refuse such a review. And in the earlier case of Rusling'sAdmr. v. Bray, 38 N.J. Eq. 398, Chancellor Runyon held that an application for rehearing of a decree advised by a vice-chancellor should be made to and entertained by the chancellor only in exceptional cases, not enumerating them. As to the chancellor's absolute power to do *Page 441 
so in any case I make no doubt, and I think that this matter is one in which the chancellor may with propriety interfere, and that he should do so. The order to show cause containing the stay was clearly made without warrant of law or equity to support it, and, therefore, comes within that rare class of cases where the chancellor should entertain an application to review the advised order. Obviously, however, this departure from the usual course cannot be drawn into a precedent generally.
And, now, subsequent to the making and filing of the order vacating and discharging the order to show cause with adinterim restraint upon the sheriff's sale, and the order for its continuance, counsel for the receiver of defendant company have applied to me to again restrain the sale, because the mortgage, being secured upon both real and personal property, was never recorded as a mortgage of personalty, and that, therefore, so far as that class of property is concerned, it is void as against creditors represented by the receiver. They claim that only since the discharging order just mentioned did they learn that the mortgage was upon chattels as well as the real estate of the defendant, and that they have only since that time acquired a copy of the advertisement of sale, which discloses that personal property on the premises will be exposed along with the real estate. It is admitted that the advertisement for sale is in the same general language describing chattels as that contained in the mortgage. It is perfectly apparent that knowledge by the receiver and his counsel of the existence of the mortgage as a lien on chattels could have been ascertained long prior to the time they said they got actual notice. It existed in the mortgage, it existed in the execution and it existed in the advertisement of sale, all of which they were interested in and should have investigated and examined. In any event, the receiver and his counsel are chargeable with notice of these facts. Their request for a stay of the sale under the execution at this time comes too late because, for the additional reason, the matter isres judicata. *Page 442 
In City of Paterson v. Baker, 51 N.J. Eq. 49,
Vice-Chancellor Van Fleet, quoting from Cromwell v. SacCounty, 94 U.S. 351, said (at p. 53 of 51 N.J. Eq.), "that parties and those in privity with them are concluded, not only as to every matter offered and received to sustain or defeat the demand, but as to any other admissible matter which might have been offered for that purpose; for example, a judgment rendered upon a promissory note is conclusive as to its validity and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery," c. Again, the same vice-chancellor, in the same case, quoting from Beloit v. Morgan, 7 Wall. 619, said (at p. 56 of 51 N.J. Eq.), "that the judgment of a court having jurisdiction of the parties and the subject-matter of the suit is conclusive, not only as to the res of that case, but as to all further litigation between the same parties touching the same subject-matter, though the res itself may be different." The doctrine of the City of Paterson v. Baker was approved by the court of errors and appeals In re Walsh's Estate, 80 N.J. Eq. 565,569, 570. And further (at p. 59 of 51 N.J. Eq.): "The doctrine under consideration is not a mere rule of procedure, limited in its operation, and only to be enforced in cases where a defeated suitor attempts to litigate anew a question once heard and decided against him, but a rule of justice, unlimited in its operation, which must be enforced whenever its enforcement is necessary for the protection and security of rights and for the preservation and repose of society." See, also, McMichael v. Horay, 90 N.J. Law 142;Goekel v. Erie Railroad Co., 2 N.J. Adv. R. 1591;126 Atl. Rep. 447; Margolies v. Goldberg, 3 N.J. Adv. R. 188;127 Atl. Rep. 271.
It is obvious that this matter of the mortgage covering chattels, in addition to the real estate, was as available to the defendant upon the hearing of the order to show cause why the order for stay and its continuance should not be vacated, as it is now. And if it were available to the defendant as valid ground to sustain the order for stay and its continuance, *Page 443 
as it should have been urged then and not reserved as ground for granting again the same relief as that attempted in the order for stay, as, indeed, it cannot be. A chattel mortgage, void as to creditors for want of statutory affidavit and proper record, is a lien upon the property mortgaged so far as the rights of the parties to the instrument are affected. Fidelity Trust Co. v.Staten Island Clay Co., 70 N.J. Eq. 551. Bergen, vice-chancellor, said (at p. 552) that it is well settled in this state that the appointment of a receiver for an insolvent corporation gives to its creditors such a lien upon the assets of the company as to give a receiver representing such creditors a footing in this court to contest the validity of a chattel mortgage covering its personal assets. But a receiver stands for the corporation and cannot impeach any act which the corporation itself could not successfully assail. Kuser v. Wright,Receiver, 52 N.J. Eq. 825, 828. And as between mortgagor and mortgagee a mortgage of chattels is good without filingWilliamson v. N.J. Southern Railroad Co., 26 N.J. Eq. 398.
Filing, record or registration is not, in the absence of statute, essential to the validity of a chattel mortgage as between parties. 11 C.J. 511 § 189. It is true that our present statute requires that a chattel mortgage to be valid as against creditors and subsequent purchasers and mortgagees in good faith (which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged) shall have annexed thereto an affidavit stating the consideration, c., of the mortgage and be recorded in the proper county, as provided in the act concerning chattel mortgages (Comp. Stat. p. 463 §§ 4, 5); but this, of course, makes no difference as to the validity of the instrument between parties and privies.
A sale by a receiver, under an order directing a sale by public auction, without any mention of prior liens or encumbrances, will transfer the property to purchasers subject to liens or encumbrances that may be upon it, and the validity and extent of the lien of a mortgage may be determined on application for disposition of the proceeds of sale. See Hackensack *Page 444 Water Co. v. De Kay, 36 N.J. Eq. 548. Applications within this rule are constantly heard and determined by this court, especially in receivership proceedings.
It is also contended for the receiver that the value of the chattels included in the mortgaged premises should be settled before sale so that prospective purchasers may know how to bid. Not so. The defendant has a right to have the debt due to the complainant, and the property upon which it is a lien, settled by the decree. Point Breeze Ferry Co. v. Bragaw, 47 N.J. Eq. 298;State Mutual Building and Loan Asso., v. O'Callahan, 65 N.J. Eq. 738.
And that is done by the decree in this case. But defendant cannot require that the decree shall settle in advance as to who may be entitled to possible surplus money. Semenowich
v. Melnyk, 93 N.J. Eq. 67 (at p. 68).
In taking leave of the subject it is proper to observe that the application for a stay should have been made in the foreclosure suit of Bankers Trust Co. v. Maxson, Receiver of Alamac HotelCo., in which the decree was entered and the execution awarded, and not in this case of W.D. Cashin Co. v. Alamac Hotel Co.,Inc., in which the receiver was appointed. However, this, in and of itself, is not fatal to the receiver's proceeding; besides, no point is made of it by counsel on either side.