ARTHUR MACFARLANE

v.

BRITTON RICHARDSON, assignee, &c., et al.

[Filed December 27th, 1897.]

1. Where, in a suit to foreclose a chattel mortgage, the answer does not set up the defence that the mortgage was not recorded immediately, as required by *Gen. Stat. p. 2113*, a decree cannot be made holding the mortgage invalid on such ground.

2. A mortgage can be declared fraudulent against creditors on a bill to foreclose only when the creditors raise that issue by their answer.

On bill, &c.

*Mr. James Benny*, for the complainant.

*Mr. James B. Vredenburgh*, for the defendant Richardson.

*Mr. John Garrick* and *Mr. Charles B. Hughes* (of the New York bar), for the defendants Gerli et al.

EMERY, V. C.

The disputes in this cause relate to the priority of a chattel mortgage given to complainant over a subsequent assignment for the benefit of creditors and over creditors whose debt existed at the time of the mortgage and who subsequently obtained judgment on their debt and title to the mortgaged chattels by sale under execution issued upon the judgment.

At the argument of the cause two grounds of priority over the chattel mortgage were relied on by the judgment creditors—*first*, that the mortgage is void as against them under the fourth section of the Chattel Mortgage act of 1885 (*Gen. Stat. p. 2113*), because it was not recorded immediately, as required by the act; and *second*, that the mortgage is fraudulent as against creditors. Neither of these defences to the mortgage, however, is specially

set up in the answer to the bill so as to make an issue thereon in the cause, and the general rule requires that such issues must be made upon the pleadings in order to justify a decree holding the mortgage invalid upon either of these grounds. In *National Bank of the Metropolis* v. *Sprague, 6 C. E. Gr. 530 (Errors and Appeals, 1870)*, a mortgage was held to be fraudulent against creditors under the statute against fraudulent conveyances, but only in favor of those creditors who had raised this issue on the record. As against those creditors who had not, by their answers, attacked the validity of the mortgage upon this ground and as against those who had failed to file answers setting up that the mortgage operated to hinder or delay them, the mortgage was sustained. The reasons given by Mr. Justice Van Syckel, in the opinion of the court (at *pp. 542, 543*), are that the mortgage, which on its face is a prior lien, being made void by statute only in favor of a particular class, the affirmative is on the creditor, and it is incumbent upon him to place himself upon the record as belonging to this class, so that his opponent can be heard. And the rule as to raising the issue specially on the record seems also, in this case, to have been applied, or at least expressly declared to be applicable, to the case of a chattel mortgage claiming precedence over a mortgage prior in time by reason of the failure to record the latter, as directed by the statute (at *pp. 532, 533*).

In reference to the execution, delivery and recording of the present mortgage and its consideration, the issues on the record are as follows: The allegations of the bill are that, on or about April 22d, 1896, William MacFarlane & Company were indebted to complainant in the sum of $3,510, and being so indebted, made the promissory note bearing date April 22d, 1896, for $3,510, payable on demand; that in order to secure the payment of the note with interest, the firm executed and delivered to complainant the mortgage in question, bearing date April 22d, 1896; that after the execution of the mortgage the same was, on the 22d day of April, 1896, acknowledged by the mortgagors, and on the 25th day of April an affidavit was endorsed thereon by complainant, setting forth its true consid-

eration, and on the 27th of April, 1896, at half-past ten o'clock in the forenoon, it was recorded.  The bill further alleges that, after the execution and delivery of the mortgage to complainant, to wit, on April 27th, 1896, the partners made an assignment to the defendant Richardson for the benefit of creditors, according to the statute, which assignment included the mortgaged chattels, and that the assignee took possession of these goods and chattels, together with the other property assigned. The bill then charges that the assignment was made " after the execution and delivery and record of complainant's mortgage," and that the assignee's title is subject to complainant's lien.  It is also alleged that the assignee had full and actual notice of complainant's mortgage.  As to the judgment creditors, the defendants Gerli & Company, the bill alleges the recovery of their judgment on or about June 4th, 1896, the issue of execution, a levy thereunder and a sale of the mortgaged chattels to the defendant on July 6th, 1897, and charges that their title is subject to complainant's mortgage.

The answer of defendant Richardson, assignee, denies any knowledge, information or belief as to the existence of the debt, sets up the assignment to himself on April 27th, 1896, alleges that his first knowledge of complainant's mortgage was received in May, 1896, after taking possession, and that he then first learned of the existence of any indebtedness from the mortgagors to complainant.  He denies any knowledge or information sufficient to form a belief whether there was any money due from William MacFarlane & Company to the complainant.  The defendants Gerli and others, by their answer, deny knowledge or information of the indebtedness to complainant, or of the making of the chattel mortgage or of its consideration, and therefore leave complainant to make proof thereof.  They also deny knowledge or information as to the date of acknowledgment of the chattel mortgage or of making the affidavit as set out in the bill, and leave the complainant to make proof thereof, but they admit on information and belief the allegations of the bill as to the time and place of record of the chattel mortgage.  And after setting out their title to the goods under the execution sale on their

13

judgment and claiming that the assignment to Richardson is
fraudulent and void as against them, they claim that they are
the owners of the goods purchased at the execution sale under
their judgment,

"free from any title or claim of said Richardson, under the said fraudulent
and void assignment so made to him for the benefit of creditors and subject
only to the indebtedness, if any, which the complainant may establish to the
satisfaction of this court to be due him from the said Jane MacFarlane and
William MacFarlane and secured to be paid by the complainant's said mort-
gage."

Clearly, no issue is made by either of these answers as to the
invalidity of the mortgage, by reason of the failure to record it
immediately, and the first reference on the record to this objec-
tion was when the mortgage was offered in evidence by the com-
plainant and objected to by the defendants, "on the ground that
it does not comply with the statute in not having been recorded
immediately after being executed." This objection to evidence
is not sufficient to create an issue not made by the pleadings.
This claim, therefore, not having been set up on the record,
would seem to be unavailing if the general rule laid down in
*National Bank of the Metropolis* v. *Sprague, supra,* is applied.

And the reasons for requiring the claim, depending upon fail-
ure to record the mortgage immediately, to be specially set up,
are more imperative than in other cases, for, as has been settled
in *Roe* v. *Meding, 8 Dick. Ch. Rep. 350* (*Errors and Appeals,
1895*), the "immediate" recording required by the act means as
soon as may be by reasonable dispatch under the circumstances
of the case (at *p. 368*). Reasonable dispatch in recording is,
therefore, a question of fact to be determined upon a considera-
tion of all the circumstances of each case, and before a decision
upon the question the contesting parties should each be notified
and be bound by the record to produce all the evidence relied
on to support their respective claims on this issue. The ulti-
mate decision upon such questions of fact often depends, either
wholly or to some extent, upon the failure of a party to produce
or explain the absence of witnesses who apparently have the
knowledge of facts necessary to their case, as made on the record,

and whom by reason of this notice on the record of the issue involved, they are bound to call under the penalty of unfavorable inferences or presumptions.   The evidence in this case, as presented on this question, is an illustration of this situation.

The person to whom the mortgage was delivered by complainant for recording and who subsequently had it recorded, is not produced as a witness by either side, nor is his absence explained, and his testimony was essential for the party who was bound to produce him or satisfactorily explain his absence.   This will appear, I think, from the following statement: The mortgage was dated April 22d, 1896, and was executed and acknowledged on that day by the complainant's mother and brother (composing the firm of William MacFarlane & Company), and to secure a note for $3,510 given by them to complainant and payable on demand.   The note was given, or claimed to be given, for wages due complainant from the firm, as the superintendent or manager of their factory for nearly five years.   The firm were then in embarrassed circumstances by reason of the failure of a customer who owed them a large amount ($10,000 as complainant says), and he knowing of this desired his claim, for which there was no written evidence, adjusted and secured.   The note was given to him for this purpose, and the mortgage, which bears the same date with the note, was executed on that date by the mortgagors, at the office of Mr. Carman, their lawyer, in New York.   It was apparently then left in the possession of Mr. Carman, from whom complainant, as he now swears, first received it on Saturday morning, April 25th, 1896, perhaps as early as ten o'clock.   Complainant then signed the affidavit to the mortgage, and, as he says, gave the mortgage to Carman in New York, with directions to record on Monday morning.   The recording offices are not open after twelve o'clock on Saturday, and the mortgage was recorded at half-past ten on Monday morning, April 27th.   Complainant's credibility upon this point, as to delivery as late as April 25th, is, however, shaken by his affidavit annexed to the bill in this case, in which he states,

MacFarlane *v.* Richardson.

"that although the said assignment [for the benefit of creditors] was made on the same day as the date of the record of deponent's mortgage, said mortgage was actually made and delivered on the said 22d day of April, 1896, and was recorded prior to the execution and delivery of the assignment," &c.

Carman seems to have had the actual custody during the interval from April 22d to April 25th, and whether he held for the mortgagee is a point upon which his evidence appears to be essential. And his evidence is essential upon another point relating to the reasonable dispatch in recording the mortgage. Complainant swears that on Saturday morning, perhaps as early as ten o'clock, and when he had taken the affidavit, he directed Carman to record the mortgage on Monday morning.

Mrs. MacFarlane, complainant's mother, and one of the mortgagors and members of the firm of William MacFarlane & Company, was called as a witness for the complainant. From her examination it appeared that on the same date with the execution of this mortgage, other mortgages to other creditors were executed, which were also recorded on the following Monday; and upon her entire evidence I think it is an open question whether, so far as she was concerned, the recording of all these mortgages, including complainant's, was not to be delayed until Monday morning in order to await the result of an application she was about to make to a creditor for the renewal of notes of the firm coming due on Monday. In answer to the question whether the witness did not instruct Carman (who was then her lawyer) not to record the mortgages in case the note was renewed, she says that she don't remember, possibly she did, but "I don't know whether I did or not." Under all the circumstances of this case developed by the evidence, the failure of the complainant to call Carman, if he was bound to do so to support the issue on his side, was a material circumstance in the case to be carefully weighed. But in the absence of an issue on the record against complainant's mortgage, which notified him of this objection and put on him the burden of sustaining such issue on his part, it would not be just to put this penalty upon him. If either party had called Carman, and his evidence had been taken upon the point now raised, and both parties had thus

MacFarlane *v.* Richardson.

proceeded without objection to the taking of evidence, as if it had been an issue on the record, an amendment of the answer so as to include the issues would have been within the power of the court, so as to embrace the proofs taken. But the case has been submitted, on this point, on proofs which are apparently not complete and which are insufficient to base a conclusion on the fact in dispute, unless an inference from failure to produce evidence is to some extent relied on, and the duty to produce this evidence could only arise by reason of an issue upon the record of which the party had notice. The case on this point seems to me to be one where the general rule as to the necessity of setting up the statutory objection to the chattel mortgage applies with special force, and that I must, therefore, overrule this objection on the ground that it was not set up by the answers.

As to the second objection to complainant's mortgage, that it was made in fraud of creditors, the case stands in a different situation, although this objection is not formally made in the answer, as required by the general rule. On the bill and answer an issue is made as to the consideration of complainant's mortgage and the indebtedness of the firm to him, and he is put upon his proof of the indebtedness, which is thereby made an issue. The main reason urged by defendants against the validity of the mortgage upon the evidence is that nothing was due to the complainant and that the alleged indebtedness was a claim created for the purpose of defeating creditors. This question, therefore, as to the indebtedness of the complainant, is fairly an issue and should be decided. Upon this question I reach the conclusion that the claim of the complainant is sustained by the evidence, which shows, in my judgment, that the note secured by the mortgage was based upon a *bona fide* settlement made at the time of giving the note between the complainant and the firm, for an indebtedness then existing in complainant's favor for wages as the manager or superintendent of their factory. These services had been performed since the complainant came of age, on June 16th, 1891, and under an express agreement for compensation, the money payment being $60 per month; and in view of the nature of the services rendered and of the proof as

to the usual rate for such services, there would seem to be no basis for concluding that the claim was a fraudulent claim. The most serious objection to the claim, in my judgment, is the delay of its adjustment by complainant until the firm became embarrassed, when its adjustment and security preferred complainant over the other creditors. But this delay is satisfactorily accounted for by the fact that, under the agreement as originally made between complainant and his mother, the money for his salary was not to be drawn out by complainant, but was to remain with the firm, in which, at the time of the agreement, it was further contemplated that at some future time he should become a partner. No agreement of partnership was made, however, either then or subsequently. The circumstance that no payments on the claim were made in the meantime to complainant which would ordinarily tend to cast doubt upon its *bona fide* existence, is also satisfactorily explained.

While under age the complainant had lived with his mother and had worked in the factory without compensation other than his board and clothing, and after coming of age and making the agreement for compensation, he still continued to live with her, receiving his board without charge and money for clothing, and also receiving for himself only small amounts for incidental expenses, which were charged to his mother's personal account or advanced by her.

The complainant becoming uneasy about his claim, in February or March, 1896, by reason of the failure of a large customer of the firm, which might threaten its solvency, pressed for a settlement and security, and the note and mortgage were thereupon given. In view of the whole circumstances of the case as disclosed by the evidence, this settlement and adjustment of complainant's claim for wages then arrived at was made fairly and in good faith, and the amount of the note secured by the mortgage must be held to be due.

I will therefore advise a decree that complainant's mortgage is a lien prior to the defendants' claim, and must be first paid out of the proceeds of sale.

The defendant Richardson, as assignee, has filed a cross-bill against the defendants Gerli & Company, but at the argument the questions arising on the cross-bill were not presented by counsel, and the decree, therefore, will go no further than establishing the complainant's rights as against the defendants.