AMELIA E. COLLERD

*v.*

JOHN J. TULLY et al.

[Decided September 12th, 1910.]

1. Where, before giving a second chattel mortgage, the mortgagor paid the mortgagee's transferee $25 monthly, as previously agreed, and the second mortgage given to the transferee provided for like payments, monthly payments of $50 were properly applied equally to the two mortgages.

2. A chattel mortgage covering all the goods and chattels mentioned in an annexed schedule "and now" in a certain stable, the schedule specifying horses, &c., and providing that all horses, &c., bought by the mortgagor during the life of the mortgage should become subject to the lien, covered after-acquired property.

3. A chattel mortgage need not be in any particular form.

4. A chattel mortgage description is sufficient if it designates the property clearly enough to enable one to determine what property is meant, and this results if the language puts one on inquiry in such way as to necessarily lead to knowledge of the property intended to be mortgaged.

5. A chattel mortgage will be construed to cover after-acquired property if the court under the terms of the mortgage would have decreed specific performance of a contract to sell or pledge it.

6. Property to which one may acquire title in the future can be validly mortgaged.

7. Evidence *held* insufficient to show that horses were sold under reservation of title as affecting a chattel mortgage covering after-acquired property.

8. Under *2 Gen. Stat. 1895 p. 2113 § 52*, making a chattel mortgage void as against the mortgagor's creditors unless it has annexed an affidavit stating the consideration of the mortgage, the affidavit must show how the debt arose on which the mortgage is founded, how the debt came into existence, and how the relation of debtor and creditor as between the mortgagor and the mortgagee was created.

9. An affidavit reciting that the consideration for a chattel mortgage was "a balance of $700 due upon a judgment recovered by E. against J. and assigned to deponent" is sufficient under *2 Gen. Stat. 1895 p. 2113 § 52*, which makes a chattel mortgage void as against the mortgagor's creditors, unless it has annexed an affidavit stating the consideration.

10. Under *2 Gen. Stat. 1895 p. 2113 § 52*, which makes a chattel mortgage void as against the mortgagor's creditors unless it has annexed an affidavit stating the consideration, where a mortgage is based on a judgment, the affidavit need not recite how the antecedent obligation merged into the judgment arose.

11. A mere judgment against one is not sufficient consideration to support a chattel mortgage; it being necessary that disadvantage result to the mortgagee or advantage to the mortgagor.

12. Under *2 Gen. Stat. 1895 p. 2113 § 52*, which makes a chattel mortgage void as against the mortgagor's creditors unless it has annexed an affidavit stating the consideration, a statement that the consideration was "also $700" which the mortgagor owed, which debt was assigned to the mortgagee, is insufficient.

13. Under *2 Gen. Stat. 1895 p. 2113 § 52*, which makes a chattel mortgage void as against the mortgagor's creditors unless it has annexed an affidavit stating the consideration, a mortgage is void where the consideration is insufficiently stated in part, though partly sufficient.

14. Where a second chattel mortgage is void as against a creditor, and the mortgagee also holds the first mortgage, the creditor can require the mortgagee to apply to the first mortgage the proceeds of property covered by such mortgage on which the creditor has no lien.

15. Where a prior lienor has more funds or property subject to his lien than a subsequent lienor has, the former, if required, must, as respects the latter, first exhaust his rights against that fund or property on which the latter has no lien.

16. In computing overdue interest and crediting part payments, the excess of payment over matured interest should be used in discharging principal, and subsequent interest should be computed on the principal thus reduced; but, if the payment be less than the interest, the surplus of unpaid interest must not be taken to augment the principal, but interest continues on the former principal until the period when the payments, taken together, exceed the interest due, and then any surplus is to be applied toward discharging that principal, and interest is to be computed on the principal thus reduced.

17. A judgment creditor of a chattel mortgagor with a levy on specific property is entitled to attack a chattel mortgage which is void for non-compliance with statutory requirements.

Heard on bill, answers, replications and proofs in open court.

The bill in this case is filed to foreclose two chattel mortgages, each made by the defendant John J. Tully, and each now owned by the complainant. Each mortgage covered horses, wagons and harness. One of these mortgages was for $2,000, and was dated December 21st, 1896, and contains a clause respecting after-acquired property. It was originally given to Mrs. Effie C. Wynants and by her assigned to her daughter, and by her daughter assigned to the complainant herein. At the time of the assignment to the complainant $1,000 was due upon this mortgage.

The other mortgage was dated December 19th, 1905, and was made to Amelia Collerd, the complainant, and was for $1,400.

The contest in the case is between the complainant and William H. Brown. Brown is the holder of two judgments against the defendant John J. Tully, upon each of which he claims to have made a levy upon the goods and chattels of Tully claimed by the complainant to be covered by the chattel mortgages held by her. One of the judgments in question was entered on the 11th of October, 1907, in the Hudson county circuit court, for $544.86; and the other, on June 25th, 1909, in the supreme court of New Jersey for $1,959.50.

Pending the suit a receiver was appointed, who took into possession and sold all the property in controversy.

*Mr. James A. Gordon,* for the complainant.

*Mr. James E. Pyle,* for the defendant Brown.

GARRISON, V. C. (after statement of facts).

The various questions raised by the defendant Brown are as follows:

*First.* As to the amount due upon the respective mortgages held by the complainant.

*Second.* As to whether the first mortgage covered after-acquired property.

*Third.* Whether either of the mortgages covered the horses sold by Brown to Tully—Brown claiming that the sales were conditional, and that the title had not passed.

*Fourth.* As to whether the second mortgage was not ineffective as to Brown because of a defective affidavit.

*Fifth.* If the second mortgage was invalid as to Brown, whether the proceeds of the sale of certain horses, on which horses Brown had no levy, should not, as respects Brown, be credited by the complainant on her first mortgage.

The complainant sought to show that Brown had not made a levy so as to entitle him to raise the questions he sought to raise.

*First.* As to the amounts due upon the mortgages for principal. The complainant admitted payments on the first mortgage to the amount of $525 in addition to the $1,000 paid before she acquired title thereto; and also admitted the payment of $100 on the second mortgage. Brown contended that the $100 credited by the complainant on the second mortgage should have been credited upon the first. The controversy arises out of four payments of $50 each made by Tully to the complainant. At the time the first mortgage was assigned to the complainant the defendant Tully signed a paper which has been admitted in evidence and marked *Exhibit C 8,* dated April 1st, 1903, as follows: "I John J. Tully do agree to pay Amelia Collerd twenty-five dollars a month on account of one mortgage to Effie C. Wynant." * * *

The second mortgage, by its terms, provides that Tully was to pay the amount in installments of $25 per month. Prior to the giving of the second mortgage (in January of 1905) Tully had been paying $25 a month to Collerd, which she credited on the mortgage she then held (the first mortgage); beginning with the month of January, 1905, Tully paid four sums of $50 per

month, which Mrs. Collerd then credited $25 on the first, and $25 on the second mortgage. I find that she properly credited the sums received, and that there has been paid $525 on the first mortgage in addition to the $1,000 paid before she acquired title, leaving $475 principal due thereon; and $100 on the second mortgage, leaving $1,300 principal due thereon.

*Second.* As to whether the first mortgage covered after-acquired property. The terms of the mortgage are:

"all the goods and chattels mentioned in the schedule hereunto annexed and now in the stable and premises No. 71 Oakland Avenue in the City of Jersey City aforesaid;"

and the schedule, after a specific description of various property (horses, trucks, harness, &c.), concludes:

"That all horses, trucks, wagons, carts and harness, purchased by the mortgagor during the life of this mortgage shall become immediately subject to the lien of this mortgage."

It will be observed that in the body of the mortgage there is no reference to any other property than that contained in the stable premises designated; and that only in the schedule (to which the body of the instrument refers the inquirer for additional information) is the after-acquired property referred to.

The first query that presented itself to me was whether the absence of any reference in the body of the instrument to after-acquired property rendered the presence of the reference thereto in the schedule ineffective. After consideration I reached the conclusion that such was not the law, and that this clause in the schedule should be given the same effect as if it had been in the body of the instrument. It was clearly the intention of the parties to pledge all the enumerated property and all of the designated kind that the mortgagor should afterward acquire. It appears from the authorities that a chattel mortgage does not have to be in any particular form; that a description of the property mortgaged is sufficient if it indicates such property clearly enough to enable one to determine what property is meant, and that this result is accomplished if the language used puts one on inquiry in such a way as to necessarily lead to knowledge

of the property intended to be mortgaged; and as to after-acquired property the rule is that the mortgage will be held to extend to such property, if the court, under the terms of the mortgage, would have decreed a specific performance of a contract to sell or to pledge it.

After-acquired property clauses have been held sufficient where they covered "all property purchased in replenishment of stock," "all property purchased in addition to the present stock," and other like descriptions.

In each of these cases it will, of course, be observed that testimony *de hors* the instrument was required to identify the property.

The principles involved and applications thereof will be found in the following cases: *Smithurst* v. *Edmunds* (*Chancellor Green, 1862*), *14 N. J. Eq.* (*1 McCart.*) *408; Shaw* v. *Glen* (*Chancellor Runyon, 1883*), *37 N. J. Eq.* (*10 Stew.*) *32; Howell* v. *Francis* (*Vice-Chancellor Bird, 1887*), *10 Atl. Rep. 436; Dunn* v. *Hastings* (*Vice-Chancellor Pitney, 1896*), *54 N. J. Eq.* (*9 Dick.*) *503; Cumberland Bank* v. *Baker* (*Vice-Chancellor Grey, 1898*), *57 N. J. Eq.* (*12 Dick.*) *231* (at *p. 237*) ; *Fidelity Trust Co.* v. *Staten Island Clay Co.* (*Vice-Chancellor Bergen, 1905*), *70 N. J. Eq.* (*4 Robb.*) *550* (at *p. 553*) ; *Stoll* v. *Sibson* (*Vice-Chancellor Reed, 1905*), *65 N. J. Eq.* (*20 Dick.*) *552; Cunningham* v. *Alryan Woolen Mills* (*Vice-Chancellor Bergen, 1905*), *69 N. J. Eq.* (*3 Robb.*) *710* (at *p. 712*).

The next matter for consideration is whether the language used in this instrument is sufficient to make the mortgage effectual as to the after-acquired property—bearing in mind that the test is the same as would be applicable in a case of specific performance.

If there is any doubt, in a case of specific performance, as to what property the parties had in mind, or as to what property the language used is intended to describe, the court will not decree the performance, because the court will not attempt to make a contract for the parties. But if a man agrees to sell or to pledge all of any kind of property that he may acquire title to, there can be no uncertainty about that.

Proof that he has acquired title is proof of the thing intended to be transferred. This clause, therefore, will not fail because of uncertainty. If it be held bad it must be because the court finds that one cannot legally agree to pledge to another all of certain kinds of property to which he may in the future acquire title. I know of no such principle, and, in fact, many of the decided cases (cited above) show that there is no such principle. Among the cases above cited will be found instances, as before mentioned, where the after-acquired property clause related to stock to be bought in addition to that then on hand, and stock to be bought in replenishment thereof, and other similar phrases. In every one of such cases the mortgagor, by the after-acquired property clause, was held to have pledged all the property of certain kinds to which he might in the future (during the life of the mortgage) acquire title. In principle such cases are indistinguishable from the one at bar. I therefore conclude that the after-acquired property clause in this mortgage is effective to cover the horses, wagons, harness, &c., to which Tully subsequently acquired title.

*Third.* Whether either of the mortgages covered the horses sold by Brown to Tully—Brown claiming that the sales were conditional and that the title had not passed.

All of the sales by Brown to Tully were after the date of the first mortgage, so that none of such horses were specifically described in it, and the lien thereof is extended to such horses by reason of the after-acquired property clause aforesaid.

In the second mortgage certain of the horses sold by Brown to Tully are specifically described.

The proper solution of the question depends upon a finding as to whether Tully acquired title to the horses he bought of Brown, or whether the sales were conditional sales and title had not passed.

Brown contends that Tully did not acquire title, and that the sales were conditional. I cannot find from the testimony that he has sustained this contention. All the sales by Brown to Tully were made through an agent of Brown's named Wilson, and were all alike in character. The horse or horses which were the subject of each sale were delivered to Tully and his note was taken for the price. These notes were discounted by

Brown. Money was loaned by Brown to Tully, and notes taken for the amount of such loans, and these notes were also discounted by Brown. No attempt to keep separate accounts of the separate sales and loan transactions was made.

When Tully paid money it was credited on the existing indebtedness indiscriminately, and the original transactions lost all identity by the merging of smaller note or notes into larger ones and combining indebtedness upon which something had been paid into new indebtedness, and representing it all by a new note.

Some of the horses died after they were delivered to Tully, but this fact was ignored by Brown in his accounts. He did not, by reason thereof, lessen his claim against Tully, as he undoubtedly would have and must have done if the sales were conditional and the horses were his and not Tully's.

Neither Brown nor his bookkeepers and agents were able to separate any one transaction from the mingled accounts. They could not trace any one sale and tell what had been paid thereon, or how much was due on any separate transaction. They were only able to state a general account—so many horses sold, amounting in the aggregate to so much, plus money loaned, so much, less what Tully had paid—leaving a net balance due by Tully of a stated sum.

Against this conclusive and convincing evidence of the nature of these sales, which demonstrated that they were ordinary sales on credit and that the title unquestionably passed to Tully, the only testimony produced is that of Wilson. He testified that Tully agreed, upon the occasion of the first sale of the Brown horses to him, that the title should not pass until the price was paid, and that a similar understanding was had, or implied, with respect to each subsequent sale. There was no writing expressive of this most important and distinguishing feature of these sales; although it was shown that in previous transactions between Wilson and Tully, where the intention was undoubtedly to make the sale conditional, Wilson caused a writing of the character required by the statute to be made and signed by Tully.

Apart from the denial of Tully of any such agreement, I am unable, in the face of the other evidence in the case, to give any credit to the testimony of Wilson in this respect; and I therefore find that title to the horses in question passed to Tully.

*Fourth.* Whether the second mortgage was not ineffective as to Brown because of a defective affidavit.

The statute (*Gen. Stat. p. 2113 § 52*) provides that a chattel mortgage shall be absolutely void as against the creditors of the mortgagor unless the mortgage have annexed thereto an affidavit stating the consideration of the mortgage; and our cases all hold that this affidavit must show how the debt arose on which the mortgage is founded; how the debt came into existence, and how the relation of debtor and creditor as between the mortgagor and the mortgagee was created. *Ehler* v. *Turner* (*Vice-Chancellor Van Fleet, 1882*), *35 N. J. Eq.* (*8 Stew.*) *68; Receiver Graham Button Co.* v. *Spielman* (*Vice-Chancellor Van Fleet, 1892*), *50 N. J. Eq.* (*5 Dick.*) *120; Dunham* v. *Cramer* (*Vice-Chancellor Grey, 1902*), *63 N. J. Eq.* (*18 Dick.*) *151; Miller* v. *Gourley* (*Vice-Chancellor Grey, 1903*), *65 N. J. Eq.* (*20 Dick.*) *237; Black* v. *Pidgeon* (*Court of Errors and Appeals, 1904*), *70 N. J. Law* (*41 Vr.*) *802.*

The affidavit attached to this mortgage recites that the consideration

"is a balance of $700 due upon a judgment recovered by Effie C. Wynants against John J. Tully and assigned to deponent, and also $700 which John J. Tully owed Abraham Collerd and which indebtedness Abraham Collerd assigned to me" (the deponent).

I cannot agree with the defendant's argument that the recital of the indebtedness due upon the judgment is insufficient. A judgment is a debt of record, and I do not think it is necessary to recite how the antecedent debt, obligation, or legal duty which is merged into the judgment, arose. The fact that it has been crystallized into a judgment is sufficient. When, therefore, a chattel mortgagee swears that she is the owner of a debt of record against the mortgagor and that the chattel mortgage is given in consideration thereof, there is a sufficient statement of the consideration of the mortgage to satisfy the statute.

The remaining question in this respect is whether it is shown in this case that the chattel mortgage was given upon this consideration—that is, whether it appears from the proofs that the chattel mortgagee canceled the judgment, or bound herself not to proceed thereon for a period, or bound or obligated herself in any way concerning the judgment so as to make it a consideration for the mortgage?

The mere fact that she held the judgment would not be a consideration for the mortgage, unless she agreed that upon receiving the mortgage she would be bound in some way with respect to the judgment. Otherwise, it would be a *nudem pactem.* It is argued that the mortgage was given as collateral security for the payment of the judgment, but even so, there must be a consideration for the mortgage, and unless the mortgagee was disadvantaged or the mortgagor was advantaged by reason of the giving of the chattel mortgage, there was no consideration. There is no proof of disadvantage to the mortgagee or of advantage to the mortgagor as a consideration of the mortgage, and no proof of any agreement of any kind by the mortgagee respecting the judgment. I do not find it necessary to pursue this inquiry further, and announce a conclusion thereon, because of my findings with respect to this affidavit, and the effect which such finding has upon the affidavit as a whole.

It will be recalled that the remaining portion of the affidavit reads: "$700 which John J. Tully owed Abraham Collerd, and which indebtedness Abraham Collerd assigned" to the deponent. This clearly is not a statement of consideration which satisfies the statute as interpreted by our cases. It does not show or attempt to show how the indebtedness arose between the mortgagor and the mortgagee. Affidavits have been held insufficient which recited that the consideration was an existing indebtedness by the mortgagor to the mortgagee—*a fortiori,* is one defective which contents itself by reciting that there was an indebtedness by the mortgagor to a third person which was transferred by such third person to the mortgagee.

The result is that I find that this affidavit is defective and does not satisfy the statute, and consequently the mortgage is invalid as to Brown, the creditor of the mortgagor.

The statute, as interpreted, requires the affidavit to state the consideration. I have found that it does not do so. Even if that portion of it which relates to the judgment be held sufficient, the result is unchanged—it must still stand or fall as a whole, and since it cannot, by reason of the remaining portion of it being defective, stand as a whole, it must fall. *Miller* v. *Gourley* (*Vice-Chancellor Grey, 1903*), *65 N. J. Eq.* (*20 Dick.*) *237.*

Vice-Chancellor Pitney, in *Bonnel* v. *Hope Manufacturing Co., 51 N. J. Eq.* (*6 Dick.*) *162,* attempted to split up the consideration as sworn to and find part good and part bad, and hold the mortgage valid as to so much of the consideration as he found had been correctly stated in the affidavit; but this case was reversed in the court of appeals (*28 Atl. Rep. 601*) because the court found that the whole consideration was properly and legally set forth in the affidavit. The result is that the later decision by Vice-Chancellor Grey, which is directly in point, controls, and I follow it.

*Fifth.* The second mortgage being invalid as to Brown, should the proceeds of the sale (by the receiver) of certain horses on which Brown had no levy be credited (as respects Brown) by the complainant on her first mortgage?

The facts necessary to be known for a complete understanding of the situation are these: The first mortgage covers all the horses, the second mortgage only certain enumerated ones. Both mortgages are now held by the complainant. Two horses sold by Brown to Tully were among those specifically enumerated in the second mortgage. Before Brown obtained his levy Tully had sold these horses to the Steel Laundry Company, consequently Brown never obtained any levy upon them. The complainant made the Steel Laundry Company a defendant, and claimed priority over its rights, and a decree *pro confesso* went against the company; and the receiver obtained possession of the two horses and sold them for $600.

If the complainant is required as against Brown to credit this amount on her first mortgage, Brown gets the benefit of the sale of these horses; if the complainant is not so required, then Brown gets no benefit whatever concerning them. Although the

second mortgage is invalid as to Brown, he obtained no levy on these horses, which, at the time he made his levy, were in the possession of the Steel Laundry Company, consequently if the complainant does not have to credit the proceeds of their sale upon her first mortgage Brown gets no benefit, because he had no lien upon these horses.

The complainant contends that, as between her and Brown, she does not have to credit this $600 (the amount brought by these two so-called "Steel horses") upon her first mortgage, because she urges that where there are two mortgages upon property, all of which is covered by the first and only a portion by the second, it is the right of the second mortgagee to require the prior mortgagee to first apply to the payment of his mortgage the proceeds of the sale of the property not covered by the second mortgage; and that since there are two mortgages here, and the horses in question are covered by both, and there is property covered by the first which is not covered by the second, it is the right of the second mortgagee to compel the first mortgagee to apply the proceeds of the other horses to the payment of the first mortgage before resorting to the proceeds of the sale of the Steel horses.

The result of this would be that the complainant's first mortgage would thus be paid out of the proceeds of the sale of the other horses—horses on which Brown had a lien, but as to which the lien of the first mortgage was superior to his—and although the second mortgage is invalid as to Brown, the complainant would obtain the $600 as against Brown because he had no lien upon the "Steel horses." Brown, however, contends that since both mortgages are owned by the complainant, and the second mortgage is invalid as to him, he has a right to require the complainant to apply to her first (and, as to him, only existing) mortgage the proceeds of the sale of any property covered by such mortgage upon which he, Brown, had no lien.

Although at first inclined to an opposite conclusion, I find this contention to be sound.

The principle to be applied is practically agreed upon and requires no citation of authorities. The only difficulty is the

application of it to the existing facts. Wherever a prior lienor has more funds or property subject to his lien than a subsequent lienor has, the former (if required) must, as respects the latter, first exhaust his rights against that fund or property upon which the latter has no lien. The complainant here has only one valid instrument, creating a lien, as against Brown—that is, the first mortgage. Under that she has a lien upon property upon which Brown has no lien, *i. e.,* the "Steel horses," as well as a lien upon property upon which Brown has also a lien. As against him she must first resort to the proceeds of that property upon which he has no lien before resorting to property upon which both of them have liens. The result is that the $600 realized by the sale of the "Steel horses" must be credited, as respects Brown, upon the first mortgage.

A question arose as to the matter of calculating the overdue interest and the proper crediting of part payments. I have not the figures before me, and can therefore only state the principle which should be applied.

The calculation should be made as of each interest period as provided in the mortgage; if the payment made exceeds the interest then due the surplus goes toward discharging the principal, and the subsequent interest is to be computed upon the principal thus reduced. If the payment be less than the interest the surplus of unpaid interest must not be taken to augment the principal, but interest continues upon the former principal until the period when the payments, taken together, exceed the interest due; and then the surplus, if any, is to be applied toward discharging that principal, and interest is to be computed upon the principal thus reduced. *Meredith* v. *Banks* (*Supreme Court, 1797*), *6 N. J. Law* (*1 Halst.*) *408; Baker* v. *Baker* (*Supreme Court, 1859*), *28 N. J. Law* (*4 Dutch.*) *13.*

The final matter to be disposed of is the contention by the complainant that Brown is not in a position to attack the complainant's rights.

Chattel mortgages which do not comply with the statutory requirements are, by the terms of the statute, void, and therefore, of course, attackable by creditors of the mortgagor.

The courts have interpreted this to mean not creditors at large, but creditors who have acquired rights with respect to the particular property covered by the alleged chattel mortgage.

A judgment and levy upon the specific property by a creditor of the mortgagor has always been held to be sufficient to entitle such a creditor to the benefit of the statute, and to arm such a creditor with the right to attack chattel mortgages covering the property levied on by him under his judgment. Brown is such a creditor. He has judgments and levies. With respect to one such levy the complainant seeks to show that it was abandoned; and with respect to the other, that it was made after the receiver herein was appointed.

I am entirely satisfied that, under the reasoning of those cases which settle the principle, Brown has sufficiently qualified himself to get the benefit of the statute. Until a creditor is in a position to assert his own rights with respect to the debtor's property he has no right to question the claims of others therein. When he is in a position to benefit by wiping out alleged or apparent liens prior to his so that he will be advantaged by having them cleared out of his way, then he is in a position to make the attack.

In the case at bar Brown has done everything he could (particularly and unquestionably under the second levy) to fix his status at law. He has obtained judgment and had the proper officer make as complete a levy as possible under the existing circumstances. The fact that such officer could not take the goods into his possession because they were in the possession of the receiver of this court in this suit does not injuriously affect Brown's position. All that is required is that the creditor shall have such a lien upon the controverted property that he could take it thereunder if the apparent prior lien of the mortgage is released. Brown is in that position. I find, therefore, that Brown is entitled to raise the issues as against the complainant, and that they should be disposed of as hereinbefore indicated.