A bill was filed in this court by the W.D. Cashin Co., acorporation, v. Alamac Hotel Co., a corporation (56-262), in which Edward Maxson, Esquire, and others, were appointed receivers for the defendant, an insolvent corporation. The others did not qualify. Afterwards, the Bankers Trust Company filed a petition for leave to foreclose a mortgage made to it by the Alamac Hotel Company, which leave was granted, *Page 4 
and thereafter a bill of foreclosure was filed by the BankersTrust Co. v. Edward Maxson, Receiver, c., et al. (57-615). After decree and fieri facias in this foreclosure suit, Mr. Maxson, receiver of the Alamac Hotel Company, sought to restrain sale of the mortgaged premises by proceedings in W.D. CashinCo. v. Alamac Hotel Co., when such proceedings should properly have been instituted and prosecuted in the foreclosure suit. SeeW.D. Cashin Co. v. Alamac Hotel Co., 98 N.J. Eq. 432.
Subsequently, litigation over this mortgage and the mortgaged premises and disposition of the proceeds of sale has been carried on irregularly in either or both of these cases without protest by any of the counsel, and in this situation the court will not protest. The present proceedings concerning the proceeds of sale have generally been prosecuted in Bankers Trust Co. v. Maxson,Receiver, et al.
On November 27th, 1925, an order was entered in Bankers TrustCo. v. Alamac Hotel Co., confirming the sale of the mortgaged premises made by the sheriff of Morris on November 16th, 1925, to the Bankers Trust Company, complainant, for the sum of $145,000, and Mr. Maxson, receiver of the Alamac Hotel Company, the mortgagor, filed a petition in this suit on November 28th, 1925, alleging that he expended $15,737.61 for betterments to the mortgaged premises, and for the protection and preservation thereof, and keeping the same insured and in proper state of repair, and prayed that the sum named be decreed to be an equitable lien against the mortgaged premises prior to the lien of the complainant's mortgage, and that the same be paid to him before the payment of any sum to the complainant.
Mrs. Allah P. Latz moves to open the foreclosure decree and the order confirming sale of the mortgaged premises, and to amend the same so as to exclude therefrom two certain lots and the buildings and chattels thereon, which were included in the decree and were sold as part of the mortgaged premises.
The Charles Albert Company, Inc., answered and admitted that there was due to the complainant the principal money *Page 5 
mentioned in its bond and secured by its mortgage set forth in the bill of complaint, and claimed that by the mortgage made to it by the Alamac Hotel Company for $75,000, on October 27th, 1923, the amount for which it was given remained still due and owing to the defendant (two concurrent mortgages, one on real estate and one on chattels, were made by the Alamac Hotel Company to the Charles Albert Company, Inc., to secure the same debt), and the defendant consented that a decree be made for the sale of the lands, premises and chattels in the foregoing indentures of mortgage mentioned and set forth in the complainant's bill, and prayed that out of the moneys thence arising it be paid the full amount of principal and interest due to it. The defendant Charles Albert Company, Inc., now claims priority over the complainant's mortgage on the chattels.
Mr. Maxson, the receiver of the Alamac Hotel Company, moves to set aside, or modify, the decree confirming the sale of the real estate in this cause, because the sheriff's report did not contain a request made by him to include the sum of $15,737.61 as a lien against the property prior to other encumbrances; that the decree did not contain a provision to retain the proceeds of the sale of real estate until the court should decree the amount due to the receiver for his disbursements. And he also claims that complainant's mortgage, so far as it covers chattels, is void as to him because he represents creditors.
The bill of complaint was filed March 11th, 1925. It alleged that the mortgage of the defendant Charles Albert Company, Inc., was subject to the lien of the complainant's mortgage. The only answer filed was by the Charles Albert Company, Inc., and it not appearing to set up any defense or to present any question except such as might properly be referred to a master, and the bill of complaint having been theretofore ordered to be taken proconfesso as against the receiver and other defendants, it was, under rule 192 of this court, referred to Peter Backes, Esquire, special master, to ascertain and report the amount due to the complainant for principal and interest secured upon the mortgaged premises, *Page 6 
goods and chattels mentioned and described in the bill of complaint, also the amount due to the defendant Charles Albert Company, Inc., upon its mortgage, and to ascertain and report the order and priority of the mortgages of the complainant and the answering defendant, and whether they embraced the samepremises, goods and chattels.
The master's report was filed July 28th, 1925. It recited that he had been attended by Lee F. Washington, Esquire, solicitor of complainant, and Harry A. Stiles, Esquire, appearing for Thomas J. Brogan, Esquire, solicitor of the defendant Charles Albert Company, Inc., and in the presence of the parties attending him, he had considered the matters thereby referred. He then reported the amount due the complainant, then the amount due the Charles Albert Company, Inc., upon its chattel mortgage made October 27th, 1923, and recorded October 29th, 1923, which was given concurrently with its real estate mortgage, and was intended to further secure the debt covered by that real estate mortgage. He then reported the amount due to the Charles Albert Company, Inc., for principal and interest on its mortgages; then reported "that the same lands and premises, goods and chattels comprised in the complainant's mortgage are also comprised in the mortgage of the defendant Charles Albert Company, Inc., and that the mortgage of the complainant was made and executed, and also recorded prior to the mortgage of the Charles Albert Company, Inc., and is entitled to priority in payment." And, further, the master reported "that the mortgage of the Charles Albert Company, Inc., which covers the real estate * * *" recites:
"Subject to a first mortgage in the principal sum of one hundred and fifty thousand [$150,000] dollars, made by the party of the first part to the Bankers Trust Company, which mortgage has been reduced by payment to the sum of one hundred and thirty-six thousand [$136,000] dollars, with interest, now a lien on said premises."
No exception was filed to this report. The final decree was filed August 25th, 1925, in and by which it was ordered adjudged and decreed that the master's report and all the matters and things therein contained do stand ratified and confirmed, *Page 7 
and "that the mortgaged lands and premises, goods and chattels
described in the bill be sold, as aforesaid, to raise and satisfy the money due to the said complainant, and to the said defendant Charles Albert Company, Inc.," and that a fieri facias issue for that purpose to the sheriff of Morris, c.
The complainant, Bankers Trust Company, insists that if either defendant wished to question complainant's claim to priority as to the goods and chattels mentioned and described in the mortgage, the question should have been raised by answer at the proper time. And this appears to be so.
In MacFarlane v. Richardson, 56 N.J. Eq. 191; affirmed, 57Ibid. 346, where an assignee, for the benefit of creditors, had failed to set up the invalidity of a chattel mortgage because it was not recorded immediately, Vice-Chancellor Emery held that where, in a suit to foreclose a chattel mortgage, the answer does not set up the defense that the mortgage was not recorded immediately, as required by statute, a decree cannot be made holding the mortgage invalid on such ground; that the mortgage can be declared fraudulent against creditors on a bill to foreclose, only when the creditors raise that issue by their answer. The only answer in this case put in was by the Charles Albert Company, Inc., and it, as stated above, conceded the priority of the lien of the complainant's mortgage. And the court of errors and appeals, in National Bank v. Sprague, 21 N.J. Eq. 530,
held that, a void mortgage is so only as to creditors who have raised the issue by their pleadings.
In Earle v. National Mettalurgic Co., 77 N.J. Eq. 17,
Vice-Chancellor Emery held that objections to a mortgage relating to its validity, as against creditors under the Registry act, could not be heard because it had not been set up and proved, citing National Bank v. Sprague and MacFarlane v.Richardson, supra. This meets in limine, and precludes the possibility of relief for the Charles Albert Company, Inc., against the complainant. It is true that the complainant's mortgage was recorded as a real estate mortgage only, and was not filed as a chattel mortgage, and the Charles Albert Company, Inc., insists that it was not notice to anyone, and *Page 8 
that, in fact, it was no lien whatever upon the chattels of the company, and that its chattel mortgage complied in every way with the requirements of the statute. This contention is unsound, for, quite aside from any question of notice from the record, the bill alleged its priority over the Charles Albert Company's mortgage, and that company answered and was before the master, who found for the complainant on this issue, and defendant did not except to the report, but suffered a decree to be entered against it.
The receiver stands in the same situation as to the claim of invalidity of complainant's mortgage as a chattel mortgage, that is, he did not answer and raise the question in the suit, and he is thereby concluded, and he is also concluded on another ground.
In Williamson v. Southern Railway Co., 26 N.J. Eq. 398, it was held that a chattel mortgage was good as between the mortgagor and mortgagee without filing, and that the receiver stands for the corporation and cannot impeach any act which the corporation could not successfully assail. See, also, Kuser v.Wright, Rec'r, 52 N.J. Eq. 825 (at p. 828); W.D. Cashin Co.
v. Alamac Hotel Co., 98 N.J. Eq. 432 (at p. 443); Earle v.National Mettalurgic Co., supra.
One reliance of the receiver is that the foreclosure bill prayed only for the sale of the mortgaged premises, and that the word "premises," as construed in Robinson Co. v. MutualFire Ins. Co., 27 N.J. Law 134, did not include personal property. This is too broad a statement. The case does not bear it out. The chief-justice, in his opinion (at p. 141) said: "`The premises above mentioned' in this policy must mean either the printing press or the building in which the press was. No other premises had been mentioned. The parties could scarcely have intended to covenant that a printing press could not be occupied in whole or in part for purposes considered hazardous. `The premises above mentioned' must then refer to the building in which the press was." So, it is plain to be seen that the word "premises" was construed, under the terms of the contract, to refer to the building, and the chief-justice's observation, "no other premises had been mentioned," is significant. *Page 9 
In 31 Cyc. 1163, the word "premises" is defined as: "Previous matter contained in an instrument in writing; that which has been before mentioned; that which is before; introduction; statements previously made." It then gives a definition of the word with reference to real estate, which is not pertinent here. In Bouv.L. Dict. (Rawle's 3d rev.) 2668, it is defined: "That which is put before. The introduction. Statements previously made." The previous matter contained in complainant's mortgage was real estate and chattels. Hence, both were included in the premises
mentioned.
The bill recites that to secure payment of the bond given by the Alamac Hotel Company to the Bankers Trust Company the former executed to the latter a mortgage securing to it "the lands,goods and chattels hereinafter described." The mortgage contained, among other provisions, one that the mortgagor would pay, or cause to be paid, certain taxes and other assessments which should be assessed, levied and imposed upon the "mortgagedpremises and property," c., and also "the mortgaged premises,goods and chattels are described as follows," c., and the following: "Also the hotel building known as the Alamac in the Mountains at Lake Hopatcong, and all other buildings, including cottages, boat houses, bowling alleys, engine houses, forge and smith shops, stables and other buildings erected upon the above-described lands, together with all of the contents thereof, including furniture, fixtures, good-will, franchises, leaseholds, easements, trade-marks, belonging to the hotel as a going concern, together with all of the properties, furniture and fixtures described in two certain appraisals of the hotel and the furnishings made by the Globe Appraisal Company, Inc., of New York City, dated May 30th, 1922." The description was sufficient.
In Shaw v. Glen, 37 N.J. Eq. 32, the description of the mortgaged premises was, "all the stock, fixtures, goods and chattels of every name and kind" in a designated store, and it was held specific enough to identify the property intended to be covered. See, also, Collerd v. Tully, 77 N.J. Eq. 439, 443. *Page 10 
As to the claim of Allah P. Latz: She appears to have been the owner of certain of the property referred to in the complainant's mortgage, and which was covered by it, on which there are two cottages, one she occupied, and, by her permission, the other was rented to the clerks of the Alamac Hotel Company. She was not a party to the foreclosure proceedings, but has recently been admitted as such. She says that the first time she heard of the foreclosure was in July, 1925, but that she did not know that her property was included in it, and says that she did not know that her property was sold under the fieri facias.
Mrs. Latz was president of the Alamac Hotel Company when the bond and mortgage were executed, and she actually signed them, and also a personal guarantee of any deficiency of the debt to the complainant. The papers of the hotel company were entrusted to the keeping of Mrs. Latz's son, who had also the deeds for the cottages. It may be assumed that his possession of her deeds for the cottages was hers alone, and not that of the hotel company. However, Mr. Latz turned over all the deeds to the scrivener who prepared the mortgage, and at the time it was executed the descriptions were read over and compared in the presence and hearing of Mrs. Latz, who signed the mortgage as president of the hotel company. This appears by statements in the briefs. It is asserted on behalf of complainant and not denied on behalf of Mrs. Latz. Testimony is referred to in the briefs on the issue now before the court, but I do not find it among the files of either of the cases, and I think that affidavits which were filed are what is referred to and treated as the testimony. No fact is challenged for want of proof; only the inferences to be drawn therefrom.
Mrs. Latz made no objection to the presence in the description of the cottages to which she held paper title, which title was of record. The most persuasive evidence to indicate that Mrs. Latz was willing that her property be included in the mortgage is that she personally guaranteed the payment of it. As she was willing to satisfy any deficiency that might exist upon sale of the mortgaged premises it would *Page 11 
seem that she was perfectly willing that her property be included in the security for its payment. The Bankers Trust Company advanced $150,000 to the Alamac Hotel Company upon the strength of this mortgage. It is a bona fide mortgage for value, and between the complainant and Mrs. Latz, the former has the stronger equity.
In Sumner v. Seaton, 47 N.J. Eq. 103, it was held that where one person looks on and sees that another is acting upon a mistaken supposition as to his rights as against the onlooker, and in such manner that he will be seriously injured by the assertion of those rights by the onlooker, and does not warn the party so acting of his mistake, the onlooker will be estopped from asserting his rights against the other person, except upon terms to indemnify him; and the mere fact that the party who is acting in good faith upon a mistaken notion as to his title to land might have discovered the true situation of the title by examining the records, will not prevent him from setting up an estoppel against the true owner who stands by in silence with knowledge of his mistake.
In Bridgewater v. Ocean City Assn., 85 N.J. Eq. 379, it was held that the question is not so much what the party setting up the estoppel might or ought to have known or supposed, as what he actually did know and suppose to the knowledge of the other party. Now, the Bankers Trust Company, who loaned the money on the strength of this mortgage, had a right to rely upon all the property mentioned in it as being that of the mortgagor, and the president of the mortgagor company knew that the two cottages covered by her deed were included in the mortgaged premises, when she signed and executed the mortgage. It would be inequitable to permit her now to say that she did not know that any of her property was included in the mortgage which she heard read over before she executed it, especially in view of the fact that she undertook as surety to be answerable for any deficiency in payment of the debt by the mortgagor. She is clearly estopped. See, also, Stokes v. Newark Meadows Imp. Co., 90 N.J. Eq. 185,195. *Page 12 
As to the receiver's claim that the decree was entered without notice to him, it is sufficient to say that he, as a defendant did not answer but defaulted in pleading, a decree pro confesso
was entered against him, and final decree was regularly made on the master's report. The Chancery act (P.L. 1902 p. 537
§ 78), provides that parties to suits shall take notice, at their peril, of the pronouncing and signing of decrees. As to his assertion that the sheriff's report, upon which the order confirming sale was made, did not contain a request made to the sheriff by the receiver to include $15,737.61 as a lien against the property prior to all other encumbrances, for expenses incurred for the betterment of the premises and for expenses for the protection and preservation of the property, such sum to be held by the sheriff out of the proceeds awaiting the court's determination as to its validity and the amount of the lien, I can only say that there is absolutely no authority for any such proposition as this. The sheriff is a ministerial officer with only a naked power of sale, and he has no right to adjudicate anything between the parties; only the court could do that, and the court up to that time had not been applied to for such purpose. See Shann v. Jones, 19 N.J. Eq. 251 (at p. 254);Collins v. Kiederling, 87 N.J. Eq. 12.
As to the claim that the decree did not contain a provision directing the sheriff to retain the proceeds of the sale of the real estate until such time as the court should decree the amount due to the receiver for his disbursements and for betterments, I would say that up to the time of the decree, and up to the time of sale under the fieri facias. no application had been made for any such relief, and, consequently, the decree could not have contained any such provision. There is nothing whatever in the assertion that no decree should have been made until the sheriff reported the sale of the mortgaged premises, real and personal. It is hard to understand any such point being made.
It is also contended for the receiver that he was entitled to notice of intention to enter an order confirming sale, and he cites chancery rule 218. But that rule does not provide *Page 13 
for notice (nor does Comp. Stat. p. 3422 § 50, under which it was adopted), but does provide that if objection shall not be made to the sale within five days after the filing of the report, an order may be entered, which shall be an order of course, confirming the sale as valid and effectual in law, and directing the officer, by whom the sale was made, to execute a good and sufficient conveyance to the purchaser. The sale of mortgaged premises takes place only upon due advertisement according to law, which is notice to the public in general, including the parties to the suit. Therefore, there is no occasion for particular notice to the parties interested of an application for an order of confirmation; the rule advises them as to that, and is a matter of which they are obliged to take notice. Another thing: after the sale of mortgaged premises in foreclosure has been reported to the court, the only ground that can be urged, under the statute and rule, to overthrow the sale, is that the property did not bring the highest and best price obtainable in cash. Cropper v. Brown, 76 N.J. Eq. 406; Oakley v. Shaw,69 Atl. Rep. 462.
The defendants have not questioned the bona fides of the sale. Their attack is an attempt to litigate with the complainant certain questions which were settled by the decree. The rights and equities of the parties to a mortgage are settled by the final decree of foreclosure. W.D. Cashin Co. v. Alamac HotelCo., 98 N.J. Eq. 432. The assertion on behalf of the receiver that the sheriff was required to report the sale of the lands within five days after such sale, and to have withheld report until after the adjourned sale of the goods and chattels was a violation of the rule, is founded on a mistake, and is without substance besides. The sale of the lands took place on November 16th, 1925. The report of sale was filed November 18th, 1925, two days after the sale. In any event, the rule says that the sheriff shall report the sale within five days, and if the report be not so filed then within five days from the filing thereof the order of confirmation may be made; but, as already said, the receiver does not object to the sale, and entirely outside of the propriety *Page 14 
of confirmation, simply claims a part of the proceeds produced at the sale for the purpose of satisfying a lien which he claims existed against the mortgaged premises.
We come now to the receiver's claim to impose a lien upon the mortgaged premises prior to the lien of the complainant's mortgage. His petition states that he expended $15,737.61 for betterments to the mortgaged premises and for the preservation thereof, in keeping the same insured and in a proper state of repair, and that in equity he is entitled to a lien against the mortgaged premises prior to the lien of the complainant's mortgage.
Counsel for the complainant says that it is true that the receiver operated the hotel and that neither the complainant nor any of the other parties in interest opposed such operation, and states frankly that the extent to which the complainant went in consenting seems under the case to be immaterial; and that the recent cases in this state (Seidler v. Branford Restaurant,Inc., 97 N.J. Eq. 153; affirmed, Ibid. 531; Greenbaum v.LaFayette and Broad Realty Corp., Ibid. 536) have established beyond question that the expenses of a receivership under our Corporation act, are entitled to priority over mortgages and other liens, special and general, though such mortgages and liens were subsisting and valid when the receiver was appointed.
And this liability is not restricted to the terms of our Corporation act, for the court of errors and appeals in Seidler
v. Branford Restaurant, Inc., supra, held that these expenses are entitled to priority, both under general principles of equity and under the Corporation act, even if the mortgagee was not benefited by the receivership. To deny the receiver compensation and expenses on the ground of lack of timely claim therefor, would be for the court to withhold payment of accounts which it had authorized by his appointment and by certain orders it had made; besides, it would be to disregard the law; a thing not to be contemplated.
Counsel for complainant objects, and reasonably, that the receiver has not yet furnished any detailed statement of the various items for which he claims priority. Among the *Page 15 
papers submitted by the receiver is an affidavit by Donald T. Magowan, manager of the hotel for the season of 1925, when the receiver operated, in which he sets forth his services and claims an allowance to the receiver to pay his, deponent's, salary as manager and purchasing agent for the receiver during the time mentioned. And this in addition to the expenses claimed by the receiver for betterments, repairs and for fire insurance. This question has not been properly argued on either side. There will have to be a reference to a master to ascertain and report the sums to which the receiver is entitled for expenses incurred and disbursed in his care and management of the mortgaged premises during his receivership, irrespective of the question of counsel fee and taxed costs, which are reserved to be decided by the court itself.
The receiver says that his not having filed a detailed statement or final account of the items for which he claims priority is because a final meeting has never been called in the matter (who are to meet I do not know), and states that before he will be in position to file his final account and request the court for payment of his disbursements, fees and costs, disposition should be made of the following questions — (1) as to receiver's claim for expenses incurred for the betterments, protection and preservation of the mortgaged premises; (2) as to receiver's claim to the proceeds of sale of the personal property, and (3) as to receiver's claim to the personal property purchased by him — that is, property which went into the hotel to make up its complement of chattels. The receiver's claim for $15,737.61 for betterments, c., will not be adjudged until the coming in of his final account. It has been above decided that his claim to the proceeds of sale of the personal property is valid and prevails over that of the Charles Albert Company, Incorporated. There has been nothing in the way of the filing of the receiver's final account, and he will be required to file it at once. It will then be referred for audit, and further equities will be reserved until the audit is reported. *Page 16 
As to the personal property purchased by the receiver: it will be observed that the mortgage on the chattels contains no provision for the extension of the lien to after-acquired chattels. Mr. Magowan's affidavit (filed in the Cashin CompanyCase, 56-262) shows that before the hotel was opened for the season of 1925, silverware, linen, dishes, c., had to be purchased and supplied by the receiver to make up the full complement of personal property necessary to afford proper service in the hotel, and that this was purchased at considerable cost.
In Collerd v. Tully, 77 N.J. Eq. 439, it was held that a chattel mortgage will be construed to cover after-acquired property if the court, under the terms of the mortgage, would have decreed specific performance of the contract to sell or pledge it. Affirmed, 78 N.J. Eq. 557. There appears to be no word in this mortgage which could be construed as a contract to include after-acquired property. Therefore, as against the receiver, after-acquired property did not come under the mortgage, and especially did the mortgage not cover property acquired by the receiver, an officer of the court.
As to receiver's certificates: On April 7th, 1925, an order was made authorizing the issuance of $3,000 of receiver's certificates for the purpose of making necessary repairs to the real estate, employing a caretaker and keeping the mortgaged premises insured against loss by fire, for the perservation and protection of the property. This order was made upon the return of an order directed to the Bankers Trust Company and other defendants to show cause why the order should not be made, reciting the grounds upon which it was asked, and it was prayed that the certificates should be a first lien on the premises, superior to any and all liens and particularly to the mortgage of the Bankers Trust Company, among others. The order to show cause was duly served, and no resistance was made to the granting of such order for certificates. Again, on April 27th, 1925, an order was made authorizing the issuance of $6,000 of receiver's certificates to raise money for the running of the hotel, employing a *Page 17 
caretaker or gardner to keep the grounds in proper condition which employment and running of the hotel were adjudged to be absolutely necessary for the preservation and protection of the estate described in the petition. This order was also made upon the return of an order directed to the Bankers Trust Company, and other defendants, to show cause why an issue of receiver's certificates in the sum of $6,000 should not be made a first lien upon the assets and estate of the defendant corporation, the money to be kept as a fund for the purpose of opening the hotel, and conducting the same and keeping the grounds in proper condition, which certificates should be a first lien upon the real and personal property of the defendant corporation, superior to all liens, and particularly to the mortgage lien of the Bankers Trust Company and others. It is asserted that the $3,000 was negotiated, but that only part of the $6,000 was raised. The master will inquire as to this, including the question of credits against these certificates, both as to those not negotiated and issued, and as to any payment that may have been made for those that were.
Milton Nova, the purchaser of the chattels at the sheriff's sale, asked leave to file a brief, which was given. But as neither it nor any pleading upon which it could be rested have been filed, any right or interest which he may have had must be considered to be waived.
Counsel for the complainant may present a decree on notice to counsel for the defendants, Edward Maxson, receiver, and the Charles Albert Company, Incorporated, adjudging that the Charles Albert Company's mortgage is subsequent and subject to the lien of the complainant's mortgage on the chattels mentioned and described in both mortgages, and in the bill of complaint; that the complainant's mortgage is a lien upon the lots, the legal title to which is in the name of Mrs. Latz, and that the sale thereof under the fieri facias passed a valid title to the purchaser; that the receiver is entitled to impose a lien upon the proceeds of the sale of the mortgaged premises, real and personal, prior to the lien of the complainant's mortgage, for such sum as he expended *Page 18 
for betterments to the mortgaged premises and for the preservation thereof, and for his compensation and costs of suit. The question as to whether the receiver is entitled to include in his lien expenses for operating the hotel, is reserved until the filing of his final account, as is also the amount of all of his expenses. The receiver will be required to file his final account within fifteen days of the time of the signing and filing of the final decree to be made in pursuance of these directions.